ROBERT A. TICHENOR, APPELLEE, V. J. J. LOHAUS, DOING BUSINESS AS JACK AND JERRY'S PARKING, APPELLANT.

322 N.W.2d 629

Filed July 23, 1982. No. 44224.

Larry E. Welch and Joseph E. Jones of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellant.

John P. Inserra of Inserra Law Office, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CLINTON, J.

The plaintiff-appellee brought this action in the District Court for Douglas County for personal injuries allegedly caused by the defendant's negligent maintenance of an icy parking lot ramp. The issues of the defendant's negligence, contributory negligence of the plaintiff, assumption of risk by the plaintiff, and plaintiff's damages were submitted to a jury after the evidence was presented. The jury returned a verdict for the plaintiff in the amount of $25,000, and the defendant appeals from that judgment to this court.

The defendant parking lot operator asserts that his motion for a directed verdict should have been granted because: (1) The evidence was insufficient to show that the defendant breached any duty owed to the plaintiff because the plaintiff had as much knowledge of the condition of the ramp as did the defendant. (2) The evidence showed that the plaintiff was guilty of contributory negligence as a matter of law. (3) The evidence demonstrated as a matter of law that the plaintiff assumed the risk of injury.

The evidence established the following facts, either directly and without dispute or by reasonable inference from the evidence. The plaintiff, Robert A. Tichenor, was employed by the Union Pacific Railroad Company at its headquarters at 1416 Dodge Street, Omaha, Nebraska. The defendant, J. J. Lohaus, was the operator of the Jack and Jerry's Parking lot. He, likewise, was employed by the Union Pacific Railroad at its headquarters. Plaintiff paid to the defendant the sum of $10 per month for the right to park his automobile in the lot. The parking lot is bordered by Davenport Street on the south, 13th Street on the east, 14th Street on the west, and an Interstate ramp on the north. The only sidewalk adjacent to the parking lot is on the Davenport Street side. The topography of the land is such that the western part of the lot, that is, the portion nearest 14th Street and the Union Pacific headquarters building, is below the level of Davenport Street and 14th Street by as much as 12 feet. The eastern portion of the lot adjacent to 13th Street is only slightly below street level. Access to and egress from the lot is accomplished by means of a curb cut on Davenport Street midway between 13th and 14th Streets leading onto an earthern ramp. The ramp itself, which is parallel to Davenport Street on the south side of the parking lot, is about 80 to 90 feet in length and descends westerly at a grade of 10 percent; that is, it drops about 1 foot for each 10 feet of its length. Abutting the ramp on the south and adjacent to the sidewalk is a stone retaining wall. The ramp is wider than is necessary to permit the passage of one car but not quite wide enough to permit the passage of two. It is covered with earth and gravel as is most of the lot.

On the morning of the accident, February 14, 1979, the plaintiff entered the parking lot by way of the ramp and noted the icy condition of the ramp and the lot. He proceeded slowly down the ramp and

parked his car along the west retaining wall. He got out of his car and proceeded up the icy and slick ramp without incident. There had been no precipitation that day, and the sidewalks and streets were clear once he exited the lot.

At the end of the plaintiff's workday, he left Union Pacific headquarters around 5:15 p.m. and headed for his car. It was still daylight and the sidewalks were clear. But when the plaintiff arrived at the parking lot, he noted the conditions had changed on the ramp. It appeared as though something had been placed on the ramp to cause melting so that the ramp was muddy where cars had traveled, but slick and icy on either side of the traveled way. The temperature was below the freezing mark. The plaintiff began picking his way down the center of the ramp. He was wearing steel-toed engineer boots with rubber soles. Shortly after he started down the ramp, he became aware that a car or cars were approaching the ramp to depart. He then moved to the left toward the retaining wall in order that the cars might pass. As he moved to the side, his left foot stepped on a patch of ice, and he fell on the ramp about 2 to 3 feet from the adjacent retaining wall, suffering a fractured ankle. Two men, one of them Peter Larmon, whose car was approaching the ramp and who saw the plaintiff fall, came to his aid, loaded him into Mr. Larmon's van, and took him to Saint Joseph Hospital.

One of the allegations of negligence contained in the plaintiff's petition was that the defendant failed to adequately clear the ramp so that it would afford a reasonably safe passage. The defendant argues that he owed no duty to the plaintiff because the hazards of the icy ramp were as well known and apparent to the plaintiff as to the defendant. He relies upon the principles stated in Restatement (Second) of Torts § 343 (1965), which provides: ''A possessor of land is subject to liability for physical harm

caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger." He cites precedents of this court which have applied the principles of that section. *Syas v. Nebraska Methodist Hospital Foundation,* 209 Neb. 201, 307 N.W.2d 112 (1981); *Crawford v. Soennichsen,* 175 Neb. 87, 120 N.W.2d 578 (1963).

It is to be noted that subsection (b) of § 343 contains alternatives. Despite the fact that the danger may be open and obvious or known, the possessor of the land may owe the duty if he should expect that the invitee will fail to protect himself against the hazard. In this case the evidence would permit the jury to infer that the ramp was the only established way for persons, after parking their cars or returning to get them, to leave and enter the lot; that the ramp was for simultaneous use by vehicles and persons on foot; that a person on foot might be required to make way for vehicles entering or leaving; and that in such circumstances the invitee might fail or be unable to protect himself against the hazard resulting from icy conditions. The defendant fails to mention that § 343 is not a complete statement of the applicable rules. Restatement (Second) of Torts § 343 A (1965) discusses the matter of known or obvious dangers on the land and the duty of the possessor. It provides, among other things, that the possessor is not liable to invitees for physical harm caused to them by a condition on the land whose danger is known, unless the possessor should anticipate the harm despite such knowledge on the part of

the invitee. The commentary to the above section discusses the ordinary cases where the possessor owes no duty. However, in commentary f. at 220, it discusses the other cases: "There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

"Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk."

The Restatement contains several illustrations which include cases of distraction and necessary use notwithstanding knowledge of the condition.

We conclude that because of the circumstances and necessity of use in this case, reasonable minds could differ as to whether the defendant failed to fulfill his duty adequately. Where reasonable minds can differ, then a jury question is presented. The defendant raises the issue of the plaintiff's use of a

possible alternative route. We will discuss his contention in that respect when we reach the issues of contributory negligence and assumption of risk.

Generally, an invitee, who has knowledge of a dangerous condition on the premises or where the dangerous condition is obvious, is negligent as a matter of law if he fails to use reasonable care to avoid injury. *Mendoza v. Aguilera,* 184 Neb. 94, 165 N.W.2d 360 (1969). Stated in another way, the intentional exposure to the known risk must be unreasonable. "In order that it may be unreasonable it is necessary that a reasonable man in his position would not expose himself to it. This in turn depends upon the comparison between the quantum of danger, including both the probability of harm and its gravity, which the plaintiff realizes or has reason to realize will be involved in the condition created by the defendant, with the value which the law attaches to the advantage which will be lost if the danger is not encountered. In many cases the plaintiff is confronted with the necessity of either foregoing the exercise of a right or privilege or encountering a danger which he realizes or has reason to realize is involved in the condition created by the defendant, as to which see § 473." Restatement (Second) of Torts § 466, Comment on Clause (a)c. at 512 (1965). Restatement (Second) of Torts § 473 (1965) says: "If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless he acts unreasonably." Nebraska law is in accord with the above principle. *McCarty v. Morrow,* 173 Neb. 643, 114 N.W.2d 512 (1962); *Halliday v. Raymond,* 147 Neb. 179, 22 N.W.2d 614 (1946); *Johnson v. Anoka-Butte Lumber Co.,* 141 Neb. 851, 5 N.W.2d 114 (1942); *Carlson v. Roberts,* 133 Neb. 166, 274 N.W. 473 (1937).

Another circumstance in which the invitee is not

guilty of contributory negligence as a matter of law is sometimes referred to as the momentary distraction exception. This court has recognized that exception. *Brown v. Slack,* 159 Neb. 142, 65 N.W.2d 382 (1954); *Glenn v. Grant Co.,* 129 Neb. 173, 260 N.W. 811 (1935). See, also, 65A C.J.S. *Negligence* § 120(2), nn. 17, 17.10, and 17.20 (1966). The principle is well stated in the Minnesota case of *Mayzlik v. Lansing Elevator Co.,* 241 Minn. 468, 477, 63 N.W.2d 380, 386 (1954), where the court said, after referring to the general rule that the invitee is generally guilty of contributory negligence in not looking where he is stepping: "That rule is not applicable in all situations. We have held that, even though plaintiff did not look where she was stepping, a jury might find that she had exercised due care inasmuch as there were distracting circumstances present. Lincoln v. Cambridge-Radisson Co. 235 Minn. 20, 49 N.W.(2d) 1. The rule is that, when there is some distraction or other reason which will excuse the failure to see that which is in plain sight, it can be said that a person has exercised that degree of care required by an ordinarily prudent person. Johnson v. Brand Stores, Inc. 241 Minn. 388, 63 N.W.(2d) 370. Under the evidence here the jury could have found that plaintiff's attention was distracted by the overflowing of the grain and that in his haste to correct the situation he was exercising due care under the circumstances when the accident occurred."

A case from this court in which all of the above principles were involved is *Sullivan v. Geo. A. Hormel and Co.,* 208 Neb. 262, 303 N.W.2d 476 (1981). There an employee of a subcontractor brought an action against the general contractor, who was in control of the premises, to recover for personal injuries when the plaintiff slipped and fell on icy and debris-covered steps, a condition of which he was aware. The employee was required to use these steps in going to and in leaving the premises on

which he worked. We said: " 'Where different minds may reasonably draw different conclusions or inferences from the evidence adduced concerning the issues of negligence or contributory negligence and the degree thereof when one is compared with the other, such issues must be submitted to the jury.' " *Id.* at 273, 303 N.W.2d at 482.

The plaintiff testified that when he sensed that a motor vehicle was approaching the ramp he moved to his left to make way for it and that he did not see the icy spot until he was just about to place his foot down, at which point he could no longer stop.

Larmon testified as to the following: His van was approaching the ramp. He saw the plaintiff on the ground and described the scene, saying, "[H]e wasn't really laying, he was spinning. So he had evidently just fallen, because he was still turning when I saw him, and he was like going around in a circle." Larmon continued up the ramp so as to assist the plaintiff and stopped the van beside him. Larmon, when asked about the condition of the ramp where he stopped, replied, "Well, when I stopped I don't remember having any trouble walking around the van behind it to help pick him up, but when we tried loading him in the van it was slick right there where he was laying."

The defendant argues that the plaintiff, instead of using the ramp, should have proceeded to the southeast corner of the parking lot where entry would have been safer. The basis for this contention is Larmon's testimony as follows: "Yes, it is fairly level. It is a little slight drop down to the lot, but not very much. It is almost level. I have never went that way even in the summertime or anything, but you can get in that way, yes." This evidence does not indicate that the plaintiff was contributorily negligent as a matter of law. There is no evidence as to indicate the condition of the ground or the safety of the entrance at the southeast corner. That point

was clearly not the established entry or exit for those on foot. It furthermore was not a point by which the plaintiff passed as he came from his work to the lot. Under the circumstances, whether a reasonable man would have investigated the alternative route would be a question for the jury to consider in its determination of the issue of the plaintiff's contributory negligence. In this case the plaintiff had purchased from the defendant the right to use the lot. It was necessary to his employment that he have such a place to park his car while at work. This is not a case where the way was so dangerous that it can be said as a matter of law that no reasonable man would use it. See Restatement (Second) of Torts § 343 A, Comments b. and c. (1965).

We hold that under the evidence the issue of the plaintiff's contributory negligence was a jury question.

The defendant, in support of his contention that the plaintiff assumed the risk of injury, cites four cases: *Fritchley v. Love-Courson Drilling Co., Inc.,* 177 Neb. 455, 129 N.W.2d 515 (1964); *Mason v. Western Power & Gas Co.,* 183 Neb. 392, 160 N.W.2d 204 (1968); *Leary v. Martin K. Eby Constr. Co., Inc.,* 191 Neb. 575, 216 N.W.2d 750 (1974); and *Schwartz v. Selvage,* 203 Neb. 158, 277 N.W.2d 681 (1979). Although this court in the first two above cases used language indicating the plaintiff was guilty of both contributory negligence and the assumption of risk, an examination of the facts therein indicates to us that contributory negligence was the real issue, not the assumption of risk. The other two cases do not even discuss assumption of risk. There is a distinction between contributory negligence and assumption of risk. See *Landrum v. Roddy,* 143 Neb. 934, 12 N.W.2d 82 (1943). Generally, assumption of risk does not involve an issue of the exercise of reasonable care, but relates to the voluntary undertaking of a known risk even though otherwise in the exer-

cise of reasonable care to avoid injury. We need not further elaborate that distinction here. The facts here do not present an issue of assumption of risk.

The trial court did not err in submitting the issues to the jury and in denying the defendant's motion for a directed verdict.

AFFIRMED.