CONSTANCE WILSON, APPELLANT, V. F & H CONSTRUCTION
COMPANY ET AL., APPELLEES.

428 N.W.2d 914

Filed September 16, 1988.   Nos. 87-047, 87-263.

Richard J. Schicker for appellant.

Thomas J. Walsh, Jr., of Walsh, Fullenkamp & Doyle, for appellee F & H Construction Company.

William E. Naviaux for appellee Taylor Plumbing, Inc.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WARREN, D.J.

SHANAHAN, J.

In consolidated cases, Constance Wilson appeals from summary judgments granted to F & H Construction Company and Taylor Plumbing, Inc., in negligence actions brought by Wilson to recover for bodily injury sustained when she fell into a hole. Wilson also included the city of Omaha as a defendant, but the action against the city is not involved in Wilson's appeal.

On February 9, 1982, F & H Construction, as general contractor, entered a contract with the housing authority of the city of Omaha for the construction of 42 units of scattered-site housing, which included construction of a six-plex. Wilson's home is located immediately north of the six-plex site.

F & H subcontracted demolition of a brick house and earthwork for construction of the six-plex. During demolition of the brick house on the six-plex site, the subcontractor struck an underground waterline. Taylor Plumbing, another subcontractor of F & H Construction, capped that broken waterline. Taylor also capped the sewerline that had serviced the demolished brick house, but was not involved with any demolition or removal of structures from the site.

As part of its subcontract with F & H Construction, Taylor Plumbing connected the sewer and water services for the six-plex by tying into the city's mains. Taylor Plumbing installed the six-plex waterline about 6 feet below ground, and then backfilled the area above the newly installed line by using a "hydraulic tamping tractor" and two other pieces of heavy equipment.

The Omaha housing authority approved and accepted the housing project in January 1983.

On February 13, 1983, Wilson stepped onto the strip of land between the sidewalk and 24th Street in front of her home adjacent to the six-plex site, and was injured when the ground caved in and she fell into a waist-deep hole. According to Wilson's husband, the ground in the area where Constance fell had never settled or sunk before the accident.

The City of Omaha was called and the depression was filled,

but the hole had to be filled two or three additional times because the ground kept sinking. Finally, on April 5, 1983, the accident site was excavated to ascertain the cause of the settling ground and accident in which Constance Wilson was injured. Representatives of F & H Construction, Taylor Plumbing, and the City of Omaha were present at the time of this investigatory excavation. Robert Taylor, president of Taylor Plumbing, described what he saw as the investigatory excavation reached the 6-foot level where Taylor Plumbing had installed the waterline from the six-plex to the city's main at 24th Street: "[W]e went down lower and found a sewer stub that was open and the water was finding its way into this new excavation here down the hole into the sewer stub . . . a stub not plugged up . . . ."

The broken and uncapped sewer stub allowed water and earth to pass from above into the main sewerline, thereby causing subterranean erosion and resulting in the overlying ground's sinking to fill the gap left by the earth which had moved through the open stub into the sewer. As a city employee related, the stub was part of "an old abandoned sewer line that came from a house that was sitting on a lot that had been torn down. We found that house line that was not plugged off, and dirt was going into that from that spot there." Before the investigatory excavation, existence of the stub was unknown to F & H Construction and its subcontractors. The stub in question was buried 2 feet beneath the waterline installed by Taylor Plumbing. A plat or "job site quarter section," prepared by the city and obtained by F & H Construction before its work at the six-plex site, showed the location of all known utility stubs, but did not show the stub where the earth caved in. Robert Taylor stated that there was no reason to suspect the stub was buried beneath the waterline installed by Taylor Plumbing, because the stub was not shown on the city's plat or quarter section. Seepage did not indicate a problem, because the ground was dry at the 6-foot level when Taylor Plumbing installed the waterline.

The stub apparently serviced an old building, a structure torn down anywhere from 5 to 50 years before F & H's construction work concerning the six-plex. No one knows who tore down the

old building, and the only indication that a structure once sat on the project site was some debris uncovered near the surface during grading of the site. In postaccident investigation, an excavatory crew traced the stub by starting at the street and digging back toward the six-plex, but the sewer pipe that had run from the stub to the old building had been removed and no additional pipe was discovered. The investigatory excavation did not disclose any waterlines or sewerlines which connected the old building to the uncapped stub. The exact distance from the discovered broken stub to the six-plex site is not definite and may range from 20 to 30 feet.

In her summary judgment affidavit, Wilson states that "[w]hile the bulldozer was digging up the foundation of the old, previously demolished house on the site, I observed that it unearthed old brick and mortar and pieces of tile pipe which were hauled off the job site."

In her second amended petition, Wilson alleged that F & H Construction and Taylor Plumbing caused her injuries by failing to properly tamp the ground after they completed the construction project, by failing to properly cap the broken sewerline, and by operating heavy machinery in the area in which the broken stub was found.

F & H Construction and Taylor Plumbing moved for summary judgment, claiming that no genuine issue of fact existed regarding their alleged liability for Wilson's injuries. The district court sustained both motions and dismissed F & H Construction and Taylor Plumbing from the case.

Wilson contends that the stub was broken by Taylor Plumbing when it installed the waterline above the stub and used three pieces of heavy equipment to backfill the installation area. Wilson argues that F & H Construction and Taylor Plumbing knew or should have known that they were excavating above an old sewerline and that they should have discovered and capped the previously broken stub, thereby preventing the cave-in which caused Wilson's injuries.

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate

inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. [Citation omitted.]

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co., ante* p. 160, 162-63, 425 N.W.2d 872, 875 (1988). See, also, Neb. Rev. Stat. § 25-1332 (Reissue 1985).

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. *Naidoo v. Union Pacific Railroad,* 224 Neb. 853, 402 N.W.2d 653 (1987); *Carlson v. Waddle,* 223 Neb. 671, 392 N.W.2d 777 (1986); *Gall v. Great Western Sugar Co.,* 219 Neb. 354, 363 N.W.2d 373 (1985). After the movant for a summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Marshall v. Radiology Assoc.,* 225 Neb. 75, 402 N.W.2d 855 (1987); *Smith v. Weaver,* 225 Neb. 569, 407 N.W.2d 174 (1987).

For actionable negligence, there must be a defendant's legal duty to protect the plaintiff from injury, a failure to discharge that duty, and plaintiff's damage proximately caused by such undischarged duty. *Holden v. Urban,* 224 Neb. 472, 398 N.W.2d 699 (1987). See, also, *Zeller v. County of Howard,* 227 Neb. 667, 419 N.W.2d 654 (1988). " ' "Duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff . . . .' " *Holden v. Urban, supra* at 474, 398 N.W.2d at 701 (quoting Prosser and Keeton on the Law of Torts, *Limited Duty* § 53 (5th ed. 1984)).

One cannot be held responsible on the theory of negligence for an injury caused by an act or omission unless the negligent tort-feasor had knowledge or was reasonably charged with

knowledge that the act or omission involved danger to another. *Hoover's Dairy, Inc. v. Mid-America Dairymen*, 700 S.W.2d 426 (Mo. 1985); *LaFaso v. LaFaso*, 126 Vt. 90, 223 A.2d 814 (1966); *Wire v. Williams*, 270 Minn. 390, 133 N.W.2d 840 (1965); *Alires v. Southern Pacific Company*, 93 Ariz. 97, 378 P.2d 913 (1963).

As we observed in *Center State Bank v. Dana, Larson, Roubal & Assoc.*, 226 Neb. 408, 415, 411 N.W.2d 635, 639 (1987):  " 'Knowledge is fundamental to liability for negligence. The very concept of negligence presupposes that the party charged therewith either fails to foresee an unreasonable risk of injury to another, or could have foreseen it had he conducted himself as a reasonably prudent person.' " (Quoting from *Farmer v. S.M.S. Trucking Co.*, 180 Neb. 779, 145 N.W.2d 922 (1966).)

> The foundation of liability for negligence is knowledge—or what is deemed in law to be the same thing: opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury. One cannot be held responsible on the theory of negligence for an injury from an act or omission on his part unless it appears that he had knowledge or reasonably was chargeable with knowledge that the act or omission involved danger to another. Concisely stated, negligence presupposes a duty of taking care, and this in turn presupposes knowledge or its equivalent.

57 Am. Jur. 2d *Negligence* § 54 at 402-03 (1971).

However, one under a duty to use care for which knowledge is necessary cannot avoid liability as the result of voluntary ignorance; constructive notice is as effective as actual notice. *Whittington v. Nebraska Nat. Gas Co.*, 177 Neb. 264, 128 N.W.2d 795 (1964); *Daugherty v. Nebraska Nat. Gas Co.*, 173 Neb. 30, 112 N.W.2d 790 (1961).

*Wilbur v. Schweitzer Excavating Co.*, 181 Neb. 317, 148 N.W.2d 192 (1967), involved a homeowners' suit against a contractor which inadvertently broke a gasline adjacent to the plaintiffs' home, almost immediately resulting in a fire caused by gas escaping from the broken line, which damaged plaintiffs' property. In affirming a directed verdict for the

contractor, this court held that, under the circumstances of the case, there was no evidence of the contractor's actual or constructive knowledge of the existence and location of the gasline. Consequently, as a matter of law, the contractor had no duty to protect against the particular hazard which damaged the plaintiffs. In *Wilbur*, factors which negated the contractor's duty to the plaintiffs included absence of the contractor's actual knowledge of the gasline, no indication concerning the gasline's presence before the contractor's work was commenced, and no public record of the gasline's existence or location.

When evidence from F & H Construction and Taylor Plumbing negated knowledge concerning a broken and uncapped stub, Wilson had the burden to present evidence demonstrating a genuine factual question about the knowledge of F & H Construction and Taylor Plumbing concerning existence of the stub in question. However, Wilson's evidence fails to establish a factual question whether the defendants actually or constructively knew about the stub, which was buried 2 feet below the waterline installed by Taylor Plumbing. The city's plat or jobsite quarter section, a public record which normally would have provided constructive notice and, therefore, knowledge concerning the stub, did not show the existence of the stub which caused the cave-in. Although there was debris near the surface of the six-plex project and remnants of an old building, previously on the site, which had fallen into ruin years before the six-plex project began, Wilson did not establish a relation between the debris and the broken stub involved in the cave-in. Postaccident excavation revealed that no pipe ran from the stub to any location for the six-plex project. The evidence provides no basis for an inference that F & H Construction or Taylor Plumbing knew about the stub or that circumstances should have alerted F & H Construction or Taylor Plumbing to the stub's presence. In the absence of knowledge or the reasonable opportunity to acquire knowledge about the broken stub, F & H Construction and Taylor Plumbing had no duty to protect against the particular hazard which resulted in Wilson's injury. Without knowledge imposing a protective duty on F & H Construction and Taylor Plumbing, the defendants were entitled to judgment as a matter of law,

that is, alleged negligence did not exist in the absence of the defendants' duty to protect Wilson and breach of that duty.

The summary judgments of the district court in favor of F & H Construction and Taylor Plumbing are, therefore, affirmed.

AFFIRMED.