JEANNE A. BURNS, APPELLANT AND CROSS-APPELLEE, V. VETERANS OF FOREIGN WARS, A NEBRASKA NONPROFIT CORPORATION, DOING BUSINESS AS VFW BENSON POST NO. 2503, APPELLEE AND CROSS-APPELLANT; THE AETNA CASUALTY & SURETY COMPANY, A FOREIGN INSURANCE CORPORATION, APPELLEE.

438 N.W.2d 485

Filed April 21, 1989.   No. 87-386.

Michael A. Nelsen, of Schmid, Mooney & Frederick, P.C., for appellant.

Eugene P. Welch, of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee Veterans of Foreign Wars.

BOSLAUGH, WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WITTHOFF, D.J.

SHANAHAN, J.

Jeanne A. Burns sued the Veterans of Foreign Wars, a Nebraska nonprofit corporation, doing business as VFW Benson Post No. 2503 (VFW), in a slip and fall case based on VFW's negligence regarding the icy loading zone on its premises. From a defendant's verdict, Burns appeals and asserts error in the district court's refusal to direct a verdict that Burns was free from contributory negligence and in the instruction given on liability of a possessor of land for a dangerous condition known to or discoverable by the possessor. VFW cross-appeals and contends that the court should have directed a verdict against Burns because she failed to prove that

the "ice patch caused her fall," and failed to prove that VFW was negligent by the presence of ice in its parking lot.

Burns filed suit against VFW, claiming that she was an invitee of VFW, which negligently allowed ice to accumulate in the loading zone near the front door of its building, an unsafe and dangerous condition which VFW knew or by exercise of reasonable care should have discovered. Burns further alleged that VFW was negligent in its failure "to have removed or remedied said [icy] condition or to have warned plaintiff concerning the same." VFW denied any negligence and alleged that Burns' negligence was "the sole and proximate cause" of her injuries.

Throughout the forepart of November 22, 1985, in Omaha, there were subfreezing temperatures, and a 19 °F reading in midafternoon. Although there had been a 3-inch snow on November 20, snow cover had dissipated to 1 inch on November 22. There was no precipitation on November 22, and the weather was sunny.

Around 2 p.m. on November 22, Burns, an employee of Martin Pastry, drove her station wagon to the front door of the VFW club to deliver a multilayer or tiered wedding cake for a reception to be held in the ballroom of the club. Burns, who had previously delivered cakes at several other wedding receptions held in the VFW club, parked her northbound station wagon at the curb of the sidewalk, 6 feet from the club's front door on the east, the only convenient access to the club's interior. The asphalt driveway where Burns parked her vehicle sloped eastward to the club's parking lot. Burns did not observe any ice as she approached the area used for loading and unloading at the club's east entrance. After she had parked her station wagon and from the left side of her vehicle, Burns commenced removing the cake, section by section, for assembly inside the club's ballroom. Burns entered the club through the front door. Just south of the doorway was a downspout for transmission of water from the club's roof to ground level. Water from the downspout entered a drain, which was laid beneath the sidewalk area, and discharged water onto the driveway and the area where Burns had parked her station wagon.

Ten minutes into the cake assembly, Burns needed the top tier

and returned to her station wagon. The last tier of the cake was located on the right rear seat of Burns' station wagon. As she stepped from the sidewalk and was walking at the right rear of her vehicle, Burns began looking for the handle of the station wagon's rear door to where the cake tier had been placed. Near the station wagon's right rear wheel, Burns fell, or in Burns' words: "[M]y feet just flew out from under me. It felt like they went up in the air." As a result of the fall, Burns sustained a broken ankle. When Burns attempted to get up, she noticed that she was on a smooth, untreated patch of ice about 2 feet wide. No VFW personnel had warned Burns about ice in the parking lot.

Dennis Taylor, the groom for whom Burns was delivering the cake, testified that he and his wife-to-be arrived at the VFW club shortly after noon on the day of the accident. Taylor had gone to the club early in order to carry some items into the hall and set up tables. When Taylor arrived, he also parked his car in the area immediately adjacent to the club's front door so that he could carry some stereo equipment into the hall. Taylor's bride-to-be, having driven her own car, arrived after Taylor and parked her car in the VFW parking lot. Taylor saw scattered icy patches between the parking lot and the sidewalk area in front of the club's east door and later walked his bride to and from her car several times because she nearly slipped and fell on the icy surface. About 15 minutes after Burns' fall, Taylor overheard Harry Housh, the VFW club manager, say, "I should have had somebody throw some salt out there."

At trial, Burns acknowledged that it was "conceivable" that she saw, but disregarded, the icy patch on the surface of the loading area at the club's entrance. Burns realized that the wintertime melting-freezing cycle in Omaha would result in the formation of ice on sidewalks and streets, requiring a pedestrian's extra precaution. According to Burns, the distinctive color and texture of the ice where she fell would have been apparent as she walked around her station wagon, but she was not looking at the ground as she approached the right rear door of her vehicle.

Burns called VFW personnel as witnesses, namely, Housh, and Harlan Menefee, the VFW custodian. Housh testified that

he was aware that individuals setting up a wedding reception in the club's ballroom would use the front door through which Burns carried material into and out of the VFW club, and knew that people would carry items through the club's front door in preparation for a wedding reception. Housh admitted that he knew that the downspout had discharged water near the front door, and was aware that water from the downspout would freeze and cause an icy condition in the area adjacent to the front door. Menefee, who had been the VFW custodian for "a couple years," was the sole VFW employee responsible for seeing that the parking lot and walkways were free from ice, but could not recall whether he had checked for ice the day of the accident. Menefee testified that he had left the club before noon and, therefore, was absent from the club when Burns fell. At times before the day of Burns' fall, Menefee had noticed that water accumulated "in front of the drainspout" in the vicinity where Burns fell. On those occasions, Menefee would apply "Ice-Melt . . . or salt" on the ice.

At the conclusion of the evidence, the judge determined, as a matter of law, that Burns was a business invitee. Burns requested a directed verdict that she was free from contributory negligence. VFW asked for a directed verdict that, as a matter of law, Burns was guilty of contributory negligence sufficient to bar recovery, see Neb. Rev. Stat. § 25-21,185 (Reissue 1985) (contributory negligence; comparative negligence), and that Burns had not established VFW's negligence. The court overruled each party's motion for a directed verdict. Burns requested an instruction based on *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982), and *Corbin v. Mann's Int'l Meat Specialties*, 214 Neb. 222, 333 N.W.2d 668 (1983), both of which adopted a liability standard identical to that expressed in Restatement (Second) of Torts § 343 at 215-16 (1965):

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize

the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.

The judge rejected Burns' tendered instruction and stated:

But my idea of Corbin and Tichenor were the plaintiff admittedly knew the condition existed and went ahead and did it. The old instruction kind of made it an automatic directed verdict, as they said, but I don't think that situation is here, and I don't think it's necessary to change the NJI instruction [NJI 8.22] under the fact situation of this case.

Over Burns' objection, the court instructed the jury in accordance with NJI 8.22 concerning a defendant's duty to a business invitee:

[I]f you find that all of the following conditions are true:

1. That there was a condition on defendant's premises involving an unreasonable risk of harm to plaintiff, which defendant knew of or in the exercise of reasonable care could have discovered; and

2. That defendant had no reasonable ground to believe that plaintiff would discover the condition or realize the risk involved; and

3. That plaintiff did not know, or from facts known to her could not reasonably have been expected to know, of the condition and the risk involved;

then the defendant was under a duty to use reasonable care to make the premises safe for plaintiff or to give her adequate warning to enable her to avoid harm, and failure to use such reasonable care, in the described circumstances, would be negligence.

## DIRECTED VERDICTS

As we have noted above, VFW does not contend that the district court erred by not directing a verdict against Burns on account of contributory negligence and, therefore, Burns' contributory negligence is not an issue on appeal. Rather, VFW's cross-appeal involves the issues whether the "ice patch caused" Burns to fall and whether VFW was negligent in the

presence of ice in its parking lot. Since VFW has not made Burns' contributory negligence an issue in this appeal, we first address the assignment of error that the district court should have directed a verdict for each of the parties—for Burns on her freedom from contributory negligence and against Burns on the question of causation regarding the ice patch and the issue of VFW's negligence.

A party against whom a motion to dismiss is directed is entitled to have all relevant evidence accepted or treated as true, every controverted fact as favorably resolved, and every beneficial inference reasonably deducible from the evidence. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987).

> A court cannot decide an issue as a matter of law unless the facts adduced on an issue are such that reasonable minds can draw but one conclusion from the evidence. [Citation omitted.] In a jury trial, when evidence compels but one reasonable conclusion regarding an issue or question in the litigation, a court can properly direct a verdict on such issue or question.

*Anderson v. Union Pacific RR. Co.*, 229 Neb. 321, 323, 426 N.W.2d 518, 519 (1988).

A plaintiff is contributorily negligent if (1) the plaintiff fails to protect himself or herself from injury; (2) the plaintiff's conduct concurs and cooperates with the defendant's actionable negligence; and (3) the plaintiff's conduct contributes to the plaintiff's injuries as a proximate cause. *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987).

## BURNS' CONTRIBUTORY NEGLIGENCE

Burns acknowledged that it was conceivable that she saw, but disregarded, the ice. Also, Burns realized that wintertime formation of ice on streets and sidewalks was a common occurrence, which necessitated precaution. According to Burns, the ice at the point of her fall would have been apparent if she were looking for surface ice. However, she was not looking at the ground as she walked and, therefore, failed to discover the icy condition near her station wagon and protect herself while walking around the vehicle. Burns' conduct is

indicative of contributory negligence. Consequently, a jury could find that the ice patch was open and obvious and conclude that Burns was contributorily negligent in failing to discover the ice and take appropriate precautions to prevent her injury. See, *Bruyninga v. Nuss*, 216 Neb. 801, 346 N.W.2d 245 (1984); *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982). The trial court properly overruled Burns' motion for a directed verdict that she was free from contributory negligence.

## VFW'S NEGLIGENCE

VFW claims that the trial court erroneously overruled its motion for directed verdict because: (1) Burns failed to prove VFW's negligence, and (2) Burns failed to prove that she slipped on a patch of ice.

"One alleging negligence has the burden to prove such negligence. Establishing that an accident has occurred does not prove a case of negligence. [Citations omitted.] Negligence is not presumed and must be proved by evidence, direct or circumstantial. [Citations omitted.]" *Holden v. Urban*, 224 Neb. 472, 474, 398 N.W.2d 699, 701 (1987).

For actionable negligence, there must be a defendant's legal duty to protect or not injure the plaintiff, a failure to discharge that duty, and plaintiff's damage proximately caused by such undischarged duty. *Wilson v. F & H Constr. Co.*, 229 Neb. 815, 428 N.W.2d 914 (1988).

"One cannot be held responsible on the theory of negligence for an injury caused by an act or omission unless the negligent tort-feasor had knowledge or was reasonably charged with knowledge that the act or omission involved danger to another." *Wilson v. F & H Constr. Co., supra* at 819-20, 428 N.W.2d at 918. See, also, *Center State Bank v. Dana, Larson, Roubal & Assoc.*, 226 Neb. 408, 415, 411 N.W.2d 635, 639 (1987): " 'Knowledge is fundamental to liability for negligence. The very concept of negligence presupposes that the party charged therewith either fails to foresee an unreasonable risk of injury to another, or could have foreseen it had he conducted himself as a reasonably prudent person.' "

Under the evidence, a jury could reasonably conclude that VFW knew that ice sometimes formed on the loading zone at the club's entrance which was used by individuals carrying items

into the club, individuals who were invitees distracted during their tasks and who would not protect themselves from the icy surface. (An invitee's failure to protect against an open or obvious dangerous condition will be considered in greater detail in our discussion concerning the district court's instruction on liability of a land possessor.) The icy condition was a risk of harm to invitees using the loading zone. Yet, Menefee, the VFW custodian, did not recollect checking for ice at the loading zone on the day of the accident. Menefee's testimony, coupled with the postaccident statement by Housh, the VFW manager, namely, he should have had "somebody throw some salt" on the loading zone, presented a jury question regarding VFW's breach of a duty to protect Burns from injury resulting from the icy condition at the loading zone.

VFW further claims that the evidence failed to establish that Burns slipped on ice, and, therefore, Burns failed to prove her injuries were caused by VFW's negligence. Burns testified, in substance, that her "feet just flew . . . up in the air" during her fall. After her fall, Burns realized that she was on an ice patch. From the evidence, a reasonable inference is deducible that Burns actually slipped on the ice on which she found herself after the fall. See *Anderson v. Union Pacific RR. Co.*, 229 Neb. 321, 426 N.W.2d 518 (1988). Therefore, a question of fact existed concerning the presence of ice at the site of Burns' fall. The district court correctly denied a directed verdict to VFW on the issue of VFW's negligence.

### LAND POSSESSOR'S LIABILITY TO AN INVITEE

The next issue in Burns' appeal is a possessor's duty to a business invitee to protect against an open and obvious dangerous condition which is discoverable by the invitee. Burns contends that a possessor may be liable for injury resulting from an open and obvious, but undiscovered, dangerous condition if the possessor defendant should expect that the invitee "will fail to protect" himself or herself from the dangerous condition. Brief for appellant at 8. Under the instruction given in Burns' trial, VFW owed no duty if Burns should have recognized the unsafe condition. VFW asserts that this instruction is consistent with the "general rule" in Nebraska, namely, "there is no duty on the part of an invitor

owner to protect the invitee against hazards which are known to the invitee or are so apparent that he may reasonably be expected to discover them and protect himself." *Bruyninga v. Nuss, supra* at 803, 346 N.W.2d at 247.

" 'Prejudicial error regarding jury instructions may not be predicated solely upon a particular sentence or phrase in an isolated instruction, but must appear from consideration of the entire instruction of which the questioned sentence or phrase is part, as well as consideration of other relevant instructions given to the jury. . . . " ' " "All the instructions must be read together and if the instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error." ' " ' "

*Bergman v. Anderson*, 226 Neb. 333, 337, 411 N.W.2d 336, 339-40 (1987) (quoting *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987)).

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction; (2) the tendered instruction is a correct statement of the law; and (3) the tendered instruction is warranted by the evidence. See *Zeeb v. Delicious Foods, ante* p. 358, 436 N.W.2d 190 (1989).

## LIABILITY FOR OPEN OR OBVIOUS CONDITIONS

The open or obvious nature of a dangerous condition in or on a possessor's land does not automatically relieve the possessor from liability for injury resulting from the dangerous condition. In commenting on *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982), this court, in *Corbin v. Mann's Int'l Meat Specialties*, 214 Neb. 222, 224, 333 N.W.2d 668, 669 (1983), stated:

In *Tichenor* we pointed out that subsection (b) of § 343 contains alternatives, and although the danger may be open and obvious or known, the possessor of land may be liable if he should expect that the invitee will fail to protect himself against it. We also said that a complete statement of the rules applicable to liability of possessors of land for dangerous conditions known or discoverable by the

possessor includes § 343 A.

Both *Tichenor* and *Corbin* involved an invitee's slip and fall on an icy surface.

More recently, in *Carnes v. Weesner*, 229 Neb. 641, 649, 428 N.W.2d 493, 498-99 (1988), which also involved an invitee's slip and fall on an icy surface, we noted:

> In *Tichenor* and *Corbin*, this court expanded the potential for finding a duty owed by possessors to invitees in the area of known or obvious dangers. Prior to these cases, possessors normally had no duty to invitees if the dangers were known and apparent to the invitees. However, in *Tichenor*, we adopted the rationale of the Restatement, *supra*, § 343 A, and comment *f.* of this section.
>
> Section 343 A at 218 states: "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them [the invitees], *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" [Emphasis in original.]
>
> In *Tichenor* and in *Corbin*, we cited comment *f.* of § 343 A with approval:
>
> " ' "There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm. . . ." ' "

In Burns' case, the evidence shows that, while the icy condition was unknown to Burns before she fell, the condition was "obvious" within the meaning of the Restatement (Second) of Torts § 343 A(1) (1965). " 'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising

ordinary perception, intelligence, and judgment." The Restatement, *supra*, § 343 A, comment *b*. at 219. Nevertheless, VFW may be liable if it should have anticipated the harm to Burns despite the obviousness of the dangerous condition. See, *Carnes v. Weesner, supra*; *Corbin v. Mann's Int'l Meat Specialties, supra*; *Tichenor v. Lohaus, supra*; *Syas v. Nebraska Methodist Hospital Foundation*, 209 Neb. 201, 307 N.W.2d 112 (1981).

> [R]eason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. . . . It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

The Restatement, *supra*, § 343 A, comment *f*. at 220.

VFW employees admitted that they were familiar with VFW invitees' parking in the loading zone adjacent to the club's front door through which items were carried into and out of the hall and acknowledged that the front door was the only convenient access into the club for individuals preparing a wedding reception in the club's ballroom. VFW's knowledge about the tasks performed by invitees, such as Burns, provides a basis for a jury to conclude that VFW should have expected that Burns, occupied in preparing the wedding reception and focusing her attention on her station wagon, which contained the remaining tier of the cake for the reception, would fail to protect herself against danger from the icy surface.

In view of this court's decisions in *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982), *Corbin v. Mann's Int'l Meat*

*Specialties,* 214 Neb. 222, 333 N.W.2d 668 (1983), and *Carnes v. Weesner, supra,* the correct statement of Nebraska law is: A possessor of land is subject to liability for injury caused to a business invitee by a condition on the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to a business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff, either (a) would not discover or realize the danger, or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the plaintiff invitee against the danger; and (5) the condition was a proximate cause of damage to the plaintiff.

The court's instruction on a land possessor's liability to a business invitee was an incorrect statement of law. Burns' tendered instruction was a correct statement of the law and was warranted by the evidence. The instruction given improperly allowed the jury to find that VFW owed no duty to Burns if VFW reasonably believed that Burns would discover the dangerous condition which resulted in her injury. The court's instruction failed to mention VFW's liability in the event of Burns' omitted protection for herself, although the risk of harm from the icy condition at the loading zone was open and obvious. In reality, the court's instruction directed a verdict for VFW regarding a dangerous condition which was open and obvious notwithstanding VFW's expectation of Burns' omission of self-protection against the danger. Because the jury, as instructed, was authorized to find that Burns' recovery was precluded by the open and obvious nature of the icy condition on the loading zone, we reverse the judgment entered on the verdict against Burns and remand this cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting.

I dissent from that part of the majority opinion which holds that the jury should have been instructed that it could find that the defendant should have expected that the plaintiff would not discover or realize the danger or fail to protect herself against it.

The accident happened at around 2 or 2:30 in the afternoon

on November 22, 1985. The plaintiff was returning to her station wagon to get the last layer of the cake she was delivering when she slipped on a small patch of ice and fell on the parking lot. When asked if she was looking where she was going as she came around, she answered: "I was looking at the side of the car, the door, I suppose, to go open the door."

In my opinion there was no basis upon which the jury could find that the defendant should have anticipated that the plaintiff would not discover the ice on the parking lot or fail to protect herself against it. As we said in *Syas v. Nebraska Methodist Hospital Foundation*, 209 Neb. 201, 204, 307 N.W.2d 112, 115 (1981), "[T]here is no evidence that the hospital should have expected Syas would not have discovered or realized the danger or would have failed to protect himself against it."

At the close of the evidence, the defendant's motion for a directed verdict was overruled. In the cross-appeal portion of the defendant's brief, it argues that the motion should have been sustained. I agree.