AL PUGH, APPELLEE AND CROSS-APPELLANT, V. GREAT PLAINS
INSURANCE CO., INC., A NEBRASKA INSURANCE CORPORATION,
APPELLANT AND CROSS-APPELLEE.

474 N.W.2d 677

Filed September 27, 1991.   No. 89-425.

William E. Pfeiffer for appellant.

Jeanne A. Weaver, of Zweiback, Hotz & Lamberty, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Al Pugh commenced an action against Great Plains Insurance Co., Inc., to collect commissions claimed under two agency agreements. Great Plains appeals from judgments entered on the verdicts for Pugh.

## STANDARD OF REVIEW
### (DIRECTED VERDICT; JUDGMENT N.O.V.)

Among its assignments of error, Great Plains contends that the district court should have directed a verdict on Pugh's second cause of action and should have entered judgment for Great Plains notwithstanding the verdict (judgment n.o.v.) for Pugh on his second cause of action.

> On a motion for judgment n.o.v., the movant is deemed to have admitted as true all the relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.

*Dunn v. Hemberger*, 230 Neb. 171, 180, 430 N.W.2d 516, 522 (1988). Accord, *Kelly Klosure v. Johnson Grant & Co.*, 229 Neb. 369, 427 N.W.2d 44 (1988); *Havlicek v. Desai*, 225 Neb. 222, 403 N.W.2d 386 (1987).

"A party against whom a motion to dismiss is directed is entitled to have all relevant evidence accepted or treated as true, every controverted fact as favorably resolved, and every beneficial inference reasonably deducible from the evidence." *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 850, 438 N.W.2d 485, 489 (1989). Accord, *Dale v. Thomas Funeral Home*, 237 Neb. 528, 466 N.W.2d 805 (1991); *Anderson v. Union Pacific RR. Co.*, 229 Neb. 321, 426 N.W.2d 518 (1988); *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987).

A court cannot decide an issue as a matter of law unless

the facts adduced on an issue are such that reasonable minds can draw but one conclusion from the evidence. [Citation omitted.] In a jury trial, when evidence compels but one reasonable conclusion regarding an issue or question in the litigation, a court can properly direct a verdict on such issue or question.

*Anderson v. Union Pacific RR. Co., supra* at 323, 426 N.W.2d at 519. Accord, *Dale v. Thomas Funeral Home, supra*; *Burns v. Veterans of Foreign Wars, supra*; *Rahmig v. Mosley Machinery Co., supra.*

### FIRST CAUSE OF ACTION

Pugh was employed by Great Plains and was responsible for sales and service of credit life insurance, credit disability insurance, and various lender security or collateral protection programs, designated "lenders' security programs," offered by banks. These programs, conducted by Empire Life Insurance Company, a Great Plains affiliate, provided insurance coverage for U.S. National Bank (Norwest) and First National Bank on loans from the banks. In view of the extensive paperwork associated with the insurance programs, Great Plains hired Management Insurance Consultants to provide computer services and assistance in lenders' security programs. Pugh was Empire's liaison between the banks and Management Insurance Consultants. In 1983, Great Plains transferred the credit life and credit disability insurance to Eagle Life Insurance Company, another Great Plains affiliate, and assigned Pugh to Eagle.

In November or December 1983, Norman Rips, the chairman of the board and chief executive officer of Great Plains, and Jeffrey Silver, secretary and general counsel of Great Plains, told Pugh that he would receive a 10-percent commission on premiums paid by First National and U.S. National in connection with lenders' security programs. Rips had authority to enter such an agreement on behalf of Great Plains and acknowledged that Great Plains "had certain kinds of specialty coverages [lender security coverage] which [Pugh] attempted to write on our [Great Plains'] behalf. And if he did so, [Great Plains] would pay him a commission. . . . [H]e was

supposed to get around 10 percent commission . . . ."

Pugh and Great Plains stipulated that the amount of premiums paid by the banks was $141,340.61 on March 31, 1985; hence, Pugh claimed a commission based on 10 percent of $141,340.61, or $14,134.06.

## SECOND CAUSE OF ACTION

Pugh agreed to assist Great Plains in development and service of a warranty insurance program for The ALCO Company, a Colorado corporation which manufactured and sold replacement doors and windows. The extended warranty coverage was in addition to ALCO's factory warranty on its products. ALCO sold the extended warranties for periods of 5 years, 10 years, or the life of an ALCO product. When a customer purchased the extended coverage, ALCO sent the "premium" to Great Plains, which retained 17.5 percent of the premium and sent the remaining 82.5 percent to an insurance company which maintained a claim fund for the ALCO warranties. Of the 17.5 percent retained by Great Plains, Pugh was supposed to receive 28.57 percent, representing 5 percent of the total premium paid by ALCO, while Great Plains would retain 71.43 percent, or 12.5 percent of the total premium paid by ALCO.

Between the fall of 1984 and May 1985, ALCO sold extended warranties, but failed to remit premiums collected for the coverage. In May 1985, Pugh met with ALCO regarding the unremitted premiums due Great Plains and obtained ALCO's check for $193,213, the amount of the unremitted premiums. However, when ALCO later notified Pugh that the check would not clear, ALCO's check was not deposited. Silver, on behalf of Great Plains, wrote several demand letters to ALCO and stated that Great Plains had "yet to receive its first dollar of premium" for the warranty coverage and emphasized "ALCO's retention of insurance premiums due and owing to Great Plains" concerning the coverage. Silver informed ALCO that, based on the "total written premiums," Great Plains claimed a "cancellation fee" of $102,750. Subsequently, Great Plains and ALCO settled their dispute by a settlement of $70,000 reflected in a cash payment of $40,000 to Great Plains and ALCO's

promissory note to Great Plains for $30,000. Pugh discovered the negotiated settlement and ALCO's eventual payment of $60,000 in accordance with the settlement. For that reason, Pugh requested that he be paid his commission pursuant to the agency agreement, that is, 28.57 percent of the $60,000 settlement payment, or $17,142. Great Plains paid Pugh $2,500, leaving a balance of $14,642 on Pugh's claimed commission, but refused further payment to Pugh because, as Great Plains asserted, any payment from ALCO was a "cancellation fee" and, therefore, not subject to the Pugh-Great Plains agency agreement for Pugh's commission.

## INSTRUCTION NO. 4

Over Great Plains' objection, the court instructed:

Before the plaintiff can recover against defendant on his first cause of action, the burden is upon the plaintiff to prove by a preponderance of the evidence each and all of the following propositions:

1. That the parties entered into a valid agreement;

2. That the agreement remained in effect from January 1, 1984 through the time the net premiums for the Lenders Security Insurance policies issued to Norwest and First National Bank were received;

3. That the plaintiff complied with the terms of the agreement;

4. That the defendant breached the agreement by failing to pay the amount due under the agreement.

If the plaintiff has failed to establish any one or more of the foregoing numbered propositions by a preponderance of the evidence, your verdict on the first cause of action will be for the defendant.

On the other hand, if the plaintiff has established, by a preponderance of the evidence, all of the above-numbered propositions, then your verdict will be for the plaintiff in the amount of $14,134.06 in his first cause of action.

At the conclusion of all evidence, Great Plains moved for a directed verdict on Pugh's second cause of action (ALCO transaction). The court overruled Great Plains' directed verdict motion and submitted the case to the jury, which returned a

$14,134.06 verdict for Pugh on his first cause of action (lenders' security programs) and also returned a verdict of $14,642 for Pugh on the cause of action relative to the ALCO warranty coverage. The court also denied Great Plains' motion for judgment notwithstanding the verdict for Pugh on his second cause of action.

## DENIAL OF DIRECTED VERDICT
## AND JUDGMENT N.O.V.

Referring to Pugh's second cause of action, which is based on the ALCO transaction, Great Plains argues that ALCO's payment of $60,000 was a "cancellation fee" and, therefore, outside operation of the agreement with Pugh for a commission concerning ALCO's warranty coverage. If Great Plains' argument is correct, the district court should have directed a verdict against Pugh and dismissed his second cause of action or entered a judgment notwithstanding the verdict for Pugh on that cause of action.

Pugh was entitled to a 5-percent commission on payments which Great Plains received from ALCO if the payments were based on extended warranty coverage sold by ALCO to its customers. Thus, the crucial question is whether ALCO's payments were based on warranty coverage issued to ALCO's customers or whether the payments from ALCO were a "cancellation fee," which, as far as we can ascertain, resembles ALCO's buying its way out of the Great Plains contract in the face of assertions that ALCO had breached the contract. Nothing in the record indicates that "cancellation fee" constitutes words of art or some type of technical jargon or that the phrase has any particular meaning supplied by any contract related to the litigation. Placed in the context of the course of dealings between ALCO and Great Plains, the $60,000 was paid by ALCO after ALCO's delivery of a $193,213 check for premiums collected on extended warranty coverage. However, the check, according to ALCO, would not be honored if deposited by Great Plains. In view of the problem concerning the check for premiums from ALCO's warranty coverage, Great Plains' demands for payment from ALCO contain specific reference to the "first dollar of premium" to be

remitted to Great Plains for the extended warranty coverage and "ALCO's retention of insurance premiums due and owing to Great Plains" for that coverage. Therefore, the evidence was susceptible to a finding that Great Plains' claim against ALCO was based on premiums which ALCO had collected for its warranty coverage, but initially failed to remit to Great Plains. In that setting, the evidence presented a submissible issue for the jury, namely, whether payments of ALCO were actually payments relative to premiums due for warranty coverage on ALCO's products. Consequently, the district court properly denied Great Plains' directed verdict motion and request for judgment n.o.v.

## CHALLENGE TO INSTRUCTION NO. 4

Great Plains challenges instruction No. 4, which, in essence, required a jury's finding that Pugh and Great Plains had but one agency agreement for lenders' security programs at First National and U.S. National, before Pugh was entitled to any recovery. Great Plains argues that the jury could have concluded that an agency agreement pertained only to First National and not to U.S. National; therefore, instruction No. 4 prejudiced Great Plains by not permitting the jury to consider existence of separate agreements.

"In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant." *Rose v. City of Lincoln*, 234 Neb. 67, 74, 449 N.W.2d 522, 528 (1989). Accord *Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 459 N.W.2d 178 (1990).

We agree with Great Plains that instruction No. 4 is potentially prejudicial. However, the detriment was directed toward Pugh, not Great Plains. According to instruction No. 4, for Pugh's recovery the jury had to find existence of an agency agreement between Great Plains and Pugh which involved insurance programs for both U.S. National and First National. Thus, instruction No. 4 required that Pugh produce evidence sufficient to establish existence of a solitary agreement which necessarily included lenders' security programs at both banks.

Absence of proof that there was a solitary agreement for dual programs defeated Pugh's recovery. Great Plains has failed to show that prejudice to Great Plains resulted from instruction No. 4.

## PREJUDGMENT INTEREST

Pugh cross-appeals and contends that the district court erred by refusing to assess prejudgment interest as the result of his verdicts against Great Plains. Since Pugh's causes of action accrued before January 1, 1987, Neb. Rev. Stat. § 45-103.02 (Reissue 1988) and its requirement of an "offer of settlement" as a prerequisite for prejudgment interest are inapplicable in Pugh's case. For that reason, we look to Nebraska law existing before January 1, 1987, relative to allowance of prejudgment interest.

" 'Prejudgment interest is allowed where the amount of the claim is liquidated. When reasonable controversy exists concerning the claimant's right to recover or the amount of such recovery, the claim is unliquidated, and prejudgment interest is not allowed. . . .' " *Knox v. Cook*, 233 Neb. 387, 394, 446 N.W.2d 1, 5 (1989). The amount of a claim is liquidated when the evidence furnishes a basis to compute an exact amount determinable without opinion or discretion inherent in the factfinding process. *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989).

*First Cause of Action.*

The evidence clearly establishes that Rips, as Great Plains' chief executive officer, not only had authority to bind Great Plains to the agency contract with Pugh, but also acknowledged that Pugh's agency agreement specified a 10-percent commission on premiums derived from the lenders' security programs at the banks. Accordingly, there was no reasonable controversy concerning Great Plains' obligation to pay a commission to Pugh. Moreover, Pugh and Great Plains stipulated that Great Plains received $141,340.61 in premiums derived from the lenders' security programs at the banks. Since Pugh's first cause of action was based on a liquidated claim and no reasonable controversy existed between Pugh and Great Plains regarding premiums or commissions pertaining to the

lenders' security programs, Pugh is entitled as a matter of law, in accordance with Neb. Rev. Stat. § 45-104 (Reissue 1988), to prejudgment interest at the rate of 12 percent per annum from March 31, 1985, the date stipulated for determining the total premium from the lenders' security programs.

*Second Cause of Action.*

Regarding the payments from ALCO, Great Plains did not contest the existence of the agency agreement with Pugh, which provided a 5-percent commission on the total premiums received from ALCO. However, there was a dispute about the nature of the payments which Great Plains received from ALCO. Were the payments actually premiums for ALCO's extended warranty coverage, as Pugh contended, or a "cancellation fee," as Great Plains contended? Existence of the dispute, which necessitated resolution by the jury's factfinding, precluded assessment of prejudgment interest. Hence, the district court correctly declined to assess prejudgment interest on the amount recovered as a result of Pugh's second cause of action.

## CONCLUSION

We affirm the judgments of the district court, except we modify the judgment on Pugh's first cause of action; that is, the sum of $14,134.06, recovered under Pugh's first cause of action, bears interest at the rate of 12 percent per annum from March 31, 1985.

AFFIRMED AS MODIFIED.