In re WALKER INDUSTRIAL AUCTIONEERS, INC., Debtor.

John B. FRANZWA, trustee, Plaintiff,

v.

KNEZ BUILDING MATERIAL CO., Defendant.

v.

SCHNITZER STEEL PRODUCTS, Defendant.

v.

TICE ELECTRIC CO., Defendant.

Bankruptcy No. 381–03054.
Adv. Nos. 82–0971, 83–0037 and 83–0038.

United States Bankruptcy Court,
D. Oregon.

Feb. 9, 1983.

---

Pamela J. Griffith, Portland, Or., for trustee.

David J. Sweeney, Portland, Or., for Schnitzer Steel Products.

Paul Dailey, Portland, Or., for Tice Elec. Co.

David Ambrose, Portland, Or., for Knez Building Material Co.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

These matters came before the court on the plaintiff-trustee's motions for summary judgment which were heard by the court on September 9, 1983. In the Schnitzer and Tice proceedings, the parties submitted Stipulated Facts. However, no such Stipulation of Facts was reached in the Knez proceeding. Consequently, the court gave the trustee until September 16, 1983 to file an affidavit of facts relating to the Knez proceeding and gave Knez until September 23rd to file a counter affidavit. On September 16th, the trustee filed an affidavit which was docketed by the clerk on September 20th. Thereafter, the affidavit was lost by the court and a duplicate one was submitted on October 19th. The affidavit was accompanied by a certificate of service by the trustee's attorney which stated that she had hand delivered the affidavit to Knez on September 16th. No counter affidavit was ever filed by Knez. Under these circumstances, the court finds that there is no dispute of facts in any of the above entitled adversary proceedings.

On September 24, 1981, a petition for relief under chapter 7 was filed against the debtor, Walker Industrial Auctioneers, Inc. An order for relief was entered on October 16, 1981. The trustee brought these three adversary proceedings to recover preferential transfers pursuant to 11 U.S.C. § 547(b). The stipulated facts of each action are summarized below.

### Schnitzer Steel Products

On May 26, 1981, the debtor and Schnitzer entered into a contract to auction whereby the debtor was to sell four forklifts and a bucket loader for Schnitzer at a public auction to be held in Sherwood, Oregon on or about June 12, 1981. The auction was held, and the equipment sold for a total combined sales price of $16,100.00. The purchasers of four of the five items paid for the equipment purchased on or about June 12, 1981. Checks representing $13,600 of the combined sales price of $16,100.00 were deposited in the debtor's United States National Bank of Oregon ("USNB") checking account number 051–0005–887 on or about June 15, 1981.

The debtor's policy was that a purchaser would pay for the items purchased, show a guard a receipt as evidence of payment, and pick up the items purchased. If a purchaser did not pay for the equipment purchased, that equipment would remain at the auction site and be subsequently returned to the owner.

The equipment subject to the auction agreement between the debtor and Schnitzer was not returned to Schnitzer at any time after the June 12, 1981 auction.

The debtor's USNB account number 051–0005–887 was used, both before and after the deposit of proceeds from the June 12, 1981 Sherwood auction for various purposes, including payment of auction proceeds due from auctions conducted both before and after the USNB account was opened, payment of auction expenses, payment of payroll and employee expenses, advance proceeds payments, tax payments and payment of other expenses of doing business.

On July 31, 1981, USNB account number 051–0005–887 was $5,700.32 overdrawn. On August 17, 1981, and within 90 days of the filing of the debtor's chapter 7 petition, the Bank of Oregon, Sherwood Branch, paid a check drawn against account number 17–00790–0, the debtor's general checking account, and payable to Schnitzer in the amount of $14,329.00. This payment represents the total proceeds of $16,100 from the sale of Schnitzer's equipment at the Sherwood auction on June 12, 1981 less the debtor's commission of $1,610.00 and an advertising fee of $161.00. The balance of the Bank of Oregon checking account number 17–00790–0 was $0.00 on July 29, 1981. The debtor's banking records do not reveal any transfer of money from the USNB account 051–0005–887 to the Bank of Oregon account number 17–00790–0 between June 12, 1981 and July 31, 1981.

### Tice Electric Company

On June 9, 1981, the debtor and Tice entered into a contract whereby the debtor was to sell certain equipment and vehicles for Tice at an auction to be held in Sherwood, Oregon on or about June 12, 1981. Two of the items listed in the contract to auction were sold by the debtor at the June 12, 1981 auction for a combined sales price of $1,100.00. On August 11, 1981, the Bank of Oregon, Sherwood Branch, paid a check drawn against account number 17–00790–0, the debtor's general checking account, and payable to Tice in the amount of $2,070.00. According to a letter by the debtor's President to Tice, the check represented the proceeds from the sale of Tice's equipment at the Sherwood auction on June 12, 1981. The debtor's records do not reflect that any equipment was sold by the debtor for Tice in any auction conducted in Sherwood after the June 12th auction and prior to the date the debtor paid Tice. On July 29, 1981, the balance of the Bank of Oregon checking account number 17–00790–0 was $0.00. On August 11, 1981, the date of payment to Tice, the debtor was insolvent. It is agreed that the unpaid unsecured creditors of the debtor will receive substantially less than a 100% payment in this chapter 7 case.

### Knez Building Materials Co.

According to the uncontroverted affidavit of the trustee's attorney, and accompanying exhibits, the debtor and Knez entered into a contract whereby the debtor was to sell certain equipment and vehicles for Knez at an auction to be held in Sherwood, Oregon on or about June 12, 1981. One of the items, a 1980 Datsun pickup was sold by the debtor for $4900 at the June 12th Sherwood auction.

The purchaser of the pickup bought items totalling $5,590.00 at the auction. He provided a down payment of $1,919.00 on the date of the auction. Notes written on an envelope by the debtor's employees indicate that the title to the pickup was mailed to the purchaser on June 18th because the purchaser had paid by cashier's check on Saturday (presumably June 13th). A check in the amount of $3618.00 dated August 21, 1981 and made payable to Knez was drawn against the debtor's general checking account number 17–00790–0 of

the Bank of Oregon, Sherwood Branch. According to a copy of a letter from the debtor to Knez, which is dated August 12, 1981, the check represents the proceeds from the June 12th auction. The $3618.00 amount represents the total proceeds of $4900.00 less $441.00 commission, $49.00 advertising and $792.00 buy back. The balance of the checking account from which the check to Knez was drawn, was zero on July 29, 1981, a date after the Sherwood auction but before the issuance of the check to Knez. The trustee's attorney states in her affidavit that on information and belief the debtor's unsecured creditors will receive substantially less than 100% payment in this chapter 7 case.

The elements of a preferential transfer are set forth in 11 U.S.C. § 547(b). Section 547(b) provides that a trustee may avoid any transfer of property of the debtor:

"(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ...

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

Defendants admit in their answers that they received payments within 90 days of the filing of the petition. That the transfers have enabled defendants to receive more than they would have received if the transfers had not been made and the creditors shared pro rata with other unsecured creditors is admitted by defendant Tice in the Stipulation of Facts filed in the proceeding against it and by defendant Knez by its failure to challenge the affidavit of the trustee's attorney which states, as in the Tice Stipulation, that the unsecured creditors will receive substantially less than 100% payment. Defendant Schnitzer denies this element in its answer. However, Schnitzer does not make this denial in its memorandum in opposition to the trustee's motion for summary judgment. At the September 9, 1983 hearing on the summary judgment motion, the trustee's attorney reported that the trustee had collected $20,000 but that the claims against the estate totalled $100,000. Therefore, it appears that unsecured creditors will receive considerably less than 100% distribution in this case and that the fifth element is met as to all three defendants.

■ On the issue of the debtor's insolvency, 11 U.S.C. § 547(f) recognizes that "for the purpose of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition". 11 U.S.C. § 547(f). The burden is on defendants to rebut this presumption. Tice admits in its Stipulation of Facts and Knez admits in its answer that the debtor was insolvent at the time of payment. Schnitzer contends that for purposes of a summary judgment motion, the moving party has the burden of establishing that there are no material facts in dispute. The court disagrees. Schnitzer has presented no affidavit and no evidence on this issue, although the court offered Schnitzer the opportunity to do so. Nor has Schnitzer alluded to any facts to overcome the presumption of insolvency. Consequently, the insolvency requirement of § 547(b) is satisfied as a matter of law.

As to the remaining elements of a preferential transfer, defendants argue the following:

(1) the transfer was not a transfer of the debtor's property;

(2) defendants were not creditors of the debtor; and

(3) there were no antecedent debts owing from the debtor to defendants

■ These arguments are interrelated. The crux of defendants' position is that the

relationships created by the contracts to auction were not debtor/creditor relationships, but rather principal/agent or consignor/consignee relationships. To support their contention, defendants point out that title to the equipment was never transferred to the debtor but instead went directly from the defendants to the purchasers upon sale. Also, defendants were required to maintain insurance on the equipment until sale. Defendants contend that as a consequence no debt was ever created and no transfer of an interest to the debtor ever occurred. All of defendants' contentions lack merit. Under the contracts to auction, the debtor took possession of defendants' equipment in order to sell the equipment at an auction to be held in Sherwood, Oregon on June 12, 1981. The contracts required defendants to transfer title from defendants to the bidders upon sale of the equipment and required the debtor to remit the proceeds of sale, less various charges, to the defendants within 20 days after the auction. The contracts did not prohibit the debtor from depositing auction proceeds into its general account or from utilizing the money prior to the end of the 20 day period. Indeed, it appears from the Knez transaction that the debtor could even maintain accounts receivable from buyers who purchased items at auction, but failed to pay for them immediately. Although the contracts to auction obligated the debtor to pay the amount of net auction proceeds to the defendants, the contracts did not establish that the collected proceeds belonged to defendants or were held for their benefit.

After the auction on June 12, 1981, the debtor was obligated either to pay each defendant an amount representing the net proceeds from the sale of the items provided for sale or to return the unsold items to defendants. Thus, after the auction each defendant possessed a right to payment with respect to the items sold.

"Creditor" is defined broadly in § 101(9)(A) of the Bankruptcy Code as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor".

"Claim" is also defined broadly. "Claim" means:

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) right to an equitable remedy, for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;" 11 U.S.C. § 101(4).

Under the above definitions, defendants were creditors of the debtor immediately after the June 12th auction.

■ Upon the expiration of the 20 day period within which the debtor was required to remit the sales proceeds to defendants, the contracts were breached and defendants' right to payment had matured into a debt due and owing (although the underlying debt was incurred when the underlying obligation arose on June 12th rather than when payment was due).

Consequently, the payments made to defendants, which were drawn on the debtor's general checking account after the 20 day period were: 1) transfers of the debtor's property, to or for the benefit of creditors, for or on account of an antecedent debt owed by the debtor before such transfers were made.

Even if the relationships between the debtor and defendants were characterized as principal/agent relationships, *See In re Martin Fein & Co., Inc.,* 34 B.R. 333 (Bkrtcy.S.D.N.Y.1983), it would be impossible for defendants to trace the agency property—the sales proceeds—since the bank account from which payments to defendants were drawn reached a zero balance nearly seven weeks after the auction was conducted but before any checks representing payment to defendants were issued. *See Morris Plan Industrial Bank of New York v. Schorn,* 135 F.2d 538

(2d Cir.1943); *In re Dorr*, 196 F. 292 (9th Cir.1912); *In re J.M. Acheson Co.*, 170 F. 427 (9th Cir.1909), 4 A Collier on Bankruptcy, 70.25[2] (14th Ed.1978). Moreover, this court has held that where a principal permits comingling by its agent, the relationship between the parties with respect to proceeds is a simple debtor-creditor relationship rather than one of actual trust. *Argonaut Insurance Co. v. Morris*, 37 B.R. 682 (Bkrtcy.D.Or.1983) (Sullivan, J.)

A major goal of the Bankruptcy Code is to treat equal classes of creditors equally. One of the tools to effect this goal is the preference statute. Having established that there is no genuine issue of material fact in these proceedings and that the requirements of 11 U.S.C. § 547 have been met, the court finds that the trustee is entitled under 11 U.S.C. § 550(a)(1) to recover the amount of the payments made to defendants by the debtor.

A judgment will be entered herein granting the trustee's motion for summary judgment.

This memorandum opinion shall constitute findings and conclusions under Bankruptcy Rule 7052.