WRIGHT & SOUZA, INC., DOING BUSINESS AS CAPITAL FINANCIAL SERVICES, APPELLEE, V. DM PROPERTIES, APPELLANT.

510 N.W.2d 413

Filed May 18, 1993.   No. A-91-951.

Thomas H. Dahlk, of Lieben, Dahlk, Whitted, Houghton, Slowiaczek & Jahn, P.C., for appellant.

Gerald P. Laughlin and Carol C. Knoepfler, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

SIEVERS, Chief Judge, and IRWIN and WRIGHT, Judges.

WRIGHT, Judge.

DM Properties (DM) appeals a jury verdict of $150,000 in favor of Wright & Souza, Inc., doing business as Capital Financial Services (Capital). DM assigns the following errors by the district court: (1) failing to sustain its demurrer to the amended petition based upon the statute of frauds, (2) overruling its motions for a directed verdict and for judgment notwithstanding the verdict, (3) instructing the jury on anticipatory breach of contract and failing to instruct that DM was privileged to deal with its own bank, and (4) refusing to instruct the jury on the defense that Capital breached its fiduciary duty as an agent of DM by failing to disclose that Capital was negotiating with DM's own bank.

## SCOPE OF REVIEW

Regarding questions of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993).

In an appeal based upon a claim of an erroneous instruction, the appellant has the burden to show that the requested instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Pugh v. Great Plains Ins. Co.*, 239 Neb. 171, 474 N.W.2d 677 (1991).

A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any competent evidence presented to the jury upon which it could find for the successful party. *Ashby v. First Data Resources*, 242 Neb. 529, 497 N.W.2d 330 (1993).

## FACTS

Capital, a loan brokerage service, brought this action against DM, owned by Robert J. Donaldson and Gordon H. Miles. Capital alleged that it had an oral contract with DM which provided that Capital would procure refinancing of up to $7.5 million for property owned by DM. The interest rate for the

refinancing was to be 2.75 basis points above the corresponding 3-year Treasury bill rate. Capital was to receive compensation of 2 percent of the refinanced amount.

Capital asserted that on January 11, 1990, DM approved the terms of a proposed refinancing commitment, including the payment to Capital of $150,000, 2 percent of the refinanced amount. Capital alleged that its only remaining obligation under the contract was to present DM with a lender's formal commitment to lend in accordance with the terms of the loan as obtained by Capital and approved by DM. Before Capital could obtain this formal commitment, Capital was informed that it should cease contact with the lender, FirsTier Bank of Lincoln.

Capital alleged that DM's actions were an anticipatory repudiation of the contract and that Capital was therefore unable to continue performing the contract. It claimed injury in the amount of $150,000.

DM demurred on the ground that the petition failed to state facts sufficient to constitute a cause of action because the alleged oral contract involved refinancing of real property and was barred by the statute of frauds. See Neb. Rev. Stat. §§ 36-103 and 36-107 (Reissue 1988). The district court overruled the demurrer. DM's answer claimed that the petition failed to state a cause of action, that it was barred by the statute of frauds, and that Capital breached its fiduciary duty as agent for its principal by not disclosing a material fact that Capital was negotiating with FirsTier, which was DM's bank.

In November 1989, Leonard Sommer, an agent for DM, contacted Gary Wright, the president of Capital, regarding the refinancing of DM's loans. Another company was attempting to locate refinancing and had quoted DM a rate of 9.5 percent. Wright told Sommer he was unable to obtain lending at that rate. Sommer directed Wright to continue his efforts on behalf of DM. At one point, Wright informed Sommer that DM could obtain refinancing of $4.5 million at 2.75 basis points over the 3-year Treasury bill with a 1.25-percent debt-service coverage and a 20-year amortization. Sommer said those terms were acceptable and directed Wright to continue with his refinancing efforts.

Capital submitted approximately 10 loan packages to various lending institutions. CitiCorp in Denver and FirsTier indicated interest in the refinancing project. Before he submitted the loan package to FirsTier, Wright confirmed the terms with Sommer. Wright did not identify the lender, but indicated that it was a "Lincoln investor" or a "Lincoln group." Wright asked Sommer if DM objected to the involvement of more than one lender, and Sommer said that it would not be a problem because several lenders were involved with the present loans on the properties.

On January 5, 1990, CitiCorp rejected the loan request. Wright informed Sommer that CitiCorp was no longer interested, but that the lender in Lincoln was nearing completion of the transaction, and it appeared that the refinancing would go forward. At that time, Wright told Sommer that the lender was FirsTier. Sommer responded that FirsTier was Donaldson's personal bank and offered that Donaldson could contact the bank. Wright declined the offer and explained that FirsTier had a comfort level for a loan of $4.5 million with a debt-service coverage of 1.15 percent, an interest rate of 2.75 basis points over the corresponding Treasury bill, and a 25-year amortization. Wright told Sommer that Capital's fee would be 2 points, or 2 percent of the total refinanced amount. Wright requested that Sommer forward this information to Donaldson.

Sommer contacted Wright approximately 1 hour later and said that Donaldson was pleased with the proposed terms and wanted to complete the deal. On January 8, Wright confirmed with FirsTier that upper management had reviewed the file and had recommended approving it. On January 11, Wright contacted FirsTier and was informed that the loan was being prepared to be submitted to the loan committee for final approval. The terms of the loan were 1.15-percent debt service, 25-year amortization, and an interest rate of 2.75 basis points over the Treasury bill. FirsTier said the full loan amount as requested would be submitted to the loan committee. The bank said it intended to "participate" the remainder of the $7.5 million with other banks.

When Wright contacted Sommer to update him on the status

of the loan, Sommer informed him that Capital's services were terminated and that Capital was to cease all of its refinancing efforts on behalf of DM. Donaldson said he would not pay a broker to obtain refinancing from his own bank. Wright testified that at no time prior to this point had Capital been excluded from doing business with FirsTier or any other potential lender.

On February 1, 1990, when Wright met with Sommer and Donaldson, Donaldson indicated that DM was willing to have Capital continue its efforts on behalf of DM, but that Capital could not use FirsTier. Donaldson requested that Wright agree that Capital would not be entitled to a fee if DM negotiated a deal with FirsTier. Wright refused, and this litigation ensued.

## ANALYSIS

### JURY INSTRUCTIONS

DM asserts that the court erred in instructing the jury on anticipatory breach of contract and in failing to instruct that DM was privileged to deal with its own bank. We have reviewed the jury instructions, and we find that the instructions as submitted are correct and that the court did not err in refusing to submit the instructions proposed by DM. In an appeal based upon a claim of an erroneous instruction, the appellant has the burden to show that the requested instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Pugh v. Great Plains Ins. Co.*, 239 Neb. 171, 474 N.W.2d 677 (1991). DM has not met this burden.

DM's requested instruction that DM was privileged to deal with its own bank under the circumstances does not correctly address the issue before us. This is an action based upon an anticipatory breach of an oral contract between the parties. The court's instruction on anticipatory breach correctly described Capital's claim. As Capital points out, it never claimed that it had an exclusive contract with DM. Whether DM could employ other parties to obtain refinancing does not have anything to do with whether DM had breached its contract with Capital. This assignment of error is without merit.

## AGENT'S DUTY

DM claims that the court erred in refusing to instruct the jury that Capital breached the fiduciary duty of an agent to his principal by failing to disclose that Capital was negotiating with DM's bank. The problem is that DM never established that Capital acted as an agent for DM. Before the court can submit instructions concerning a fiduciary duty of an agent, agency between the parties must be established.

Some of the factors to be used in determining whether an agency relationship exists between the parties include: (1) the extent of control the employer exercises over the details of the work, (2) whether the work is done under the supervision of the employer or without supervision, (3) whether the payment is by the hour or by the job, (4) whether the work is part of the regular business of the employer, (5) whether the employer is in the type of business performed, and (6) whether the one employed is engaged in a distinct occupation or business. See *Smith v. Butler Manuf. Co.*, 230 Neb. 734, 433 N.W.2d 493 (1988).

As we examine these factors, we find that DM exercised no control over Capital; that Capital was engaged in a distinct occupation which was usually done without supervision; that the method of payment was not based on an hourly rate, but was based on whether Capital was able to perform the job of obtaining refinancing; and that the work was not a regular part of the business of DM. These factors demonstrate that no agency relationship existed between Capital and DM. Since no agency existed, the court correctly refused to instruct the jury on agency. We find this assignment of error to be without merit.

## STATUTE OF FRAUDS

We next consider whether it was error for the court to overrule the demurrer alleging that the cause of action was barred by the statute of frauds and to then submit the case to the jury. DM argues that an oral agreement to pay a commission to a mortgage broker is subject to the statute of frauds. The Nebraska Supreme Court has never expressly decided whether a contract with a mortgage broker falls within the Nebraska statute of frauds. See §§ 36-103 and 36-107.

DM cites as support a statement in *Don J. McMurray Co. v. Wiesman*, 199 Neb. 494, 498, 260 N.W.2d 196, 200 (1977):

> [L]iability of a proposed borrower to a mortgage broker for securing a loan commitment is governed by the same principles which apply in determining the liability of a seller to a real estate agent for the commission earned by having produced a buyer ready, willing, and able to purchase the listed property, i.e., in the absence of a special agreement to the contrary, the right of a broker to a commission, where the deal he is authorized to negotiate is not consummated, depends upon his production of a customer who is able, ready, and willing to make the desired loan upon terms satisfactory to the principal.

We do not find that this case supports DM's position.

*Don J. McMurray Co.* was an action upon a written contract to recover a brokerage fee claimed to have been earned by having secured a loan commitment for a long-term loan for the defendant. The rule cited in *Don J. McMurray Co.* actually supports Capital's position. "A broker does not, in the absence of a contractual provision providing otherwise, lose his [or her] right to an earned commission because the loan is not consummated on account of the unjustified failure or refusal of the principal to complete the transaction. 12 C. J. S., Brokers, § 95, p. 221." *Don J. McMurray Co.*, 199 Neb. at 499, 260 N.W.2d at 200.

We note that in *Don J. McMurray Co.*, the contract was ambiguous, and the court found that the evidence supported the trial court's interpretation of the contract that the broker's fee was payable only when the loan was obtained. In the present case, it was for the trier of fact to determine the intent of the parties.

We find that the oral contract between DM and Capital was a contract for services which did not create an interest in land under § 36-103 or § 36-107.

The fact that DM would have been required to pledge real estate as security for the loan does not place this oral agreement within the statute of frauds. The operative word in § 36-107 is "sale." An oral agreement between parties to obtain refinancing for an existing loan which is to be secured by real

estate mortgages does not constitute a sale of land within the statute of frauds. This assignment of error is also without merit.

### DIRECTED VERDICT AND JUDGMENT
### NOTWITHSTANDING THE VERDICT

DM contends that the court erred in overruling its motions for a directed verdict and for a judgment notwithstanding the verdict and that the court should have found that there was not an enforceable contract as a matter of law. Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993).

We review the record to determine whether the facts support the jury's finding that DM entered into an oral contract for Capital to obtain satisfactory refinancing for DM's existing loans. The trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Eccleston v. Chait*, 241 Neb. 961, 492 N.W.2d 860 (1992).

The record contains conflicts in the evidence, and certain material facts are in dispute. As we review the record, we cannot say that DM was entitled to a judgment as a matter of law.

A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any competent evidence presented to the jury upon which it could find for the successful party. *Ashby v. First Data Resources*, 242 Neb. 529, 497 N.W.2d 330 (1993). In awarding $150,000 to Capital, the jury believed that the loan package would have been recommended for approval and that before the loan package was presented to the loan committee, DM refused to accept the package and ordered further transactions with Capital halted. We find that the trial court correctly denied DM's motions for a directed verdict and for a judgment notwithstanding the verdict and that DM's assignment of error is without merit.

The verdict and the judgment of the district court are affirmed.

AFFIRMED.