No. 95-1158

In re: Rine & Rine Auctioneers,    *
Inc.,    *
   *
    Debtor    *
   *
_____    *
   *
Rine & Rine Auctioneers, Inc.,    *
   *
    Plaintiff,    *
   *
    v.    * Appeal from the United States
   * District Court for the
Douglas County Bank & Trust    * District of Nebraska
Company; David Huddle,    *
   *
    Defendants-Appellees.    *
   *
_____    *
   *
Richard D. Myers,    *
   *
    Trustee-Appellant.    *

_____

Submitted: September 13, 1995

Filed: January 22, 1996
_____

Before McMILLIAN, HEANEY and MURPHY, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

Richard D. Myers (Trustee), trustee of the bankruptcy estate of Rine & Rine Auctioneers, Inc. (Debtor), appeals from an order entered in the United States District Court for the District of Nebraska, affirming the bankruptcy court's judgment in favor of Douglas County Bank & Trust Company (Bank) in an adversary proceeding brought by the Trustee pursuant to 11 U.S.C. § 547, alleging that a payment in the amount of $6,761.48 made by Debtor

to David Huddle and the Bank was an avoidable preferential transfer. Myers v. Douglas County Bank & Trust Co. (In re Rine & Rine Auctioneers, Inc.), No. 8:CV94-269 (D. Neb. Dec. 7, 1994), aff'g No. BK92-80770/A93-8098 (Bankr. D. Neb. Apr. 18, 1994). For reversal, the Trustee argues that the bankruptcy court erred in holding that the money paid by Debtor to Huddle and the Bank was held by the Debtor as an agent for its principal, Huddle, and it was therefore not property of the estate which the Trustee could recover under § 547. For the reasons discussed below, we reverse the order of the district court and remand the case to the district court with instructions.

## Background

The underlying facts are summarized as follows. Debtor was a corporation in the business of auctioning personal property for its customers. Debtor orally agreed with Huddle, an auto repair business owner, that Debtor would conduct an auction sale to dispose of Huddle's business assets. Huddle's business assets were the security for a loan which had been made by the Bank to Huddle. Debtor agreed to conduct the sale, collect the proceeds, deduct advertising expenses and its commission, and distribute the remainder to the financial institutions holding security interests in the assets sold; the remainder, if any, would be paid to Huddle. The Huddle sale occurred on December 18, 1991, and earned $23,737.50, which was deposited in Debtor's general bank account. Thereafter, Debtor issued a check in the amount of $6,761.48 payable to the Bank and Huddle. Huddle endorsed the check to the Bank, which received the full amount of the check as payment for Huddle's outstanding loan.[1]

---

[1]Because the Bank received the full amount of the $6,761.48 payment from Debtor, Huddle has no real interest in this controversy and therefore has not participated in the litigation.

-2-

On April 27, 1992, Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. The Trustee filed an adversary proceeding against the Bank and Huddle, seeking to set aside the payment made by Debtor to the Bank and Huddle on grounds that the payment was an avoidable preferential transfer under 11 U.S.C. § 547(b).[2] The Trustee maintained that Huddle was a creditor and the money in dispute was property of the bankruptcy estate which should be distributed in the normal course of the bankruptcy proceedings. Following a hearing, the bankruptcy court entered a written order in which it concluded that, under Nebraska law, Debtor and Huddle were in an agent-principal relationship, not a debtor-creditor relationship, and therefore the money was, at all relevant times, the property of Huddle. Because Huddle owned the

---

[2]Section 547(b) (emphasis added) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of <u>an interest of the debtor in property</u> --

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made --
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if --
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

-3-

money, the bankruptcy court reasoned, the money was never the property of Debtor and therefore the Trustee had failed to satisfy the threshold requirement that there be a transfer of "an interest of the debtor in property." 11 U.S.C. § 547(b). Thus, the bankruptcy court held that Debtor's payment to the Bank and Huddle was not an avoidable preferential transfer. Slip op. at 2-3. The Trustee appealed the bankruptcy court's ruling to the district court. Upon review, the district court agreed with the bankruptcy court's analysis and affirmed. This appeal followed.

## Discussion

Under the Bankruptcy Code, a trustee may avoid a pre-petition transfer of property by the debtor to a third party upon proof of several criteria. 11 U.S.C. § 547(b). A threshold requirement of § 547(b), however, is that the property transferred be "an interest of the debtor in property." Id. This requirement is satisfied in the present case if the money transferred to Huddle and the Bank was property of Debtor's estate at the time of the transfer. See Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.), 850 F.2d 1275, 1279 & n.8 (8th Cir. 1988) (Bellanca I) (the phrase "property of the debtor" in the pre-1984 version of § 547(b), which was replaced by "an interest of the debtor in property," is equivalent to "property of the estate" for purposes of determining whether the transfer of proceeds derived from the debtor's sale of transferee's assets constituted a voidable preference); see also 4 Lawrence P. King et al., Collier on Bankruptcy ¶ 547.03, at 547-25 ("[t]he fundamental inquiry is whether the transfer diminished or depleted the debtor's estate"), 547-24 n.18 (citing cases), 547-25 n.20 (citing cases) (15th ed. 1995) (hereinafter Collier). Under 11 U.S.C. § 541(a)(1), property of the estate is generally defined to include all legal or equitable interests of the debtor in property.

-4-

When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations <u>de novo</u> and findings of fact for clear error.  <u>Wegner v. Grunewaldt</u>, 821 F.2d 1317, 1320 (8th Cir. 1987).  As the second court of appellate review, we conduct an independent review of the bankruptcy court's judgment, applying the same standards of review as the district court.  <u>Id.</u> In the present case, the controlling legal issue that was before the district court, and is now before this court on appeal, is whether the bankruptcy court erred in holding that the transfer did not involve an interest of the debtor in property, as required by § 547(b).  Central to this statutory issue is the question of whether the relationship between Debtor and Huddle, vis-a-vis the money transferred, was that of agent and principal or debtor and creditor at the time of the transfer.  As a general rule, if property is in the debtor's hands as agent, the property or proceeds therefrom are not treated as property of the debtor's estate.  4 Collier ¶ 541.08, at 541-42 to 541-42.1.  State law controls questions concerning the nature and extent of the debtor's interest in property.  <u>N.S. Garrott & Sons v. Union Planters Nat'l Bank  (In re N.S. Garrott & Sons)</u>, 772 F.2d 462, 466 (8th Cir. 1985) (<u>Garrott</u>).  Therefore, Nebraska law governs the question of whether or not an agency relationship existed at the time of the transfer.  <u>Accord</u> 4 Collier ¶ 547.03, at 547-24 to 547-25 ("The term `interest of the debtor in property' is not defined in the Bankruptcy Code . . . and thus, `[w]e look to state law to determine whether property is an asset of debtor.'") (quoting <u>Kallen v. Ash, Anos, Freedman & Logan (In re Brass Kettle Restaurant, Inc.)</u>, 790 F.2d 574, 575 (7th Cir. 1986)).  Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve the statutory issue.  <u>See</u> <u>Garrott</u>, 772 F.2d at 466 (once a determination is made regarding the nature and extent of the debtor's interest in property, federal

bankruptcy law dictates the extent to which that interest is property of the estate).[3]

The bankruptcy court in the present case held that, because Debtor was the agent of Huddle, the Trustee had failed to meet his burden of proving that the money transferred to the Bank and Huddle was property of Debtor's estate. The bankruptcy court reasoned:

> In Nebraska, the relationship between an auctioneer and the party who has employed the services of the auctioneer to sell personal property is that of principal and agent. Edwin Bender & Sons v. Ericson Livestock [Comm'n Co.], 228 Neb. 157, 421 N.W.2d 766 (1988). Under the law of agency when an agent is entrusted with care of a principal's property, ownership remains in the principal. Edmondson v. Aladdin Synergetics, Inc. (In re Tinnell Traffic Services, Inc.), 43 B.R. 277, 279 (Bankr. M.D. Tenn. 1984). Additionally, when there exists a true agency relationship, a transfer by the agent of agency property to the principal is not a voidable preference. The reason is that the transfer is not property of the debtor but is property of the principal. Jensen-McLean Co. v. Crouthamel Potato Chip Co. (In re Crouthamel Potato Chip Co.), 6 B.R. 501 (Bankr. E.D. Pa. 1980).
>
> In this case, the debtor entered into an oral contract with Mr. Huddle. The contract provided that Mr. Huddle would make his personal property available for sale and that the debtor would conduct an auction. Following the auction, the debtor would collect the proceeds of the sale and, after deducting sale expenses, including commission, would deliver the balance to [Huddle] or to [Huddle's] secured creditors.
>
> The debtor did conduct the auction and collect the proceeds. The fact that the debtor deposited the

_____

[3]We note that both the bankruptcy court and the district court considered the state law agency issue and the federal statutory issue as one and the same under the facts of the present case. While we agree that, in many cases (as in the present case), the two issues will be closely intertwined, we caution that disposition of the state law agency issue will not, in every instance, conclusively decide whether or not property retained by the debtor shall be treated as property of the estate under the Bankruptcy Code. Each case will depend on its specific facts.

> proceeds into the debtor's own account does not change
> the ownership of the proceeds.  The relationship of the
> parties was that of agent and principal.  The agent, the
> debtor, held the property, the proceeds of the sale, for
> the principal, Mr. Huddle.  Mr. Huddle did not at any
> time agree that the proceeds of the sale would become
> the property of the debtor.

Slip op. at 2.


Citing Wright & Souza, Inc. v. DM Properties, 510 N.W.2d 413 (Neb. Ct. App. 1993) (Wright & Souza), the Trustee argues that the bankruptcy court erred in holding that Debtor and Huddle were in an agency relationship at the time the money was transferred.  The Trustee also maintains that Edwin Bender & Sons v. Ericson Livestock Comm'n Co., 421 N.W.2d 766 (Neb. 1988) (Bender & Sons), relied upon by the Bank and cited in both the bankruptcy court and the district court opinions, is inapplicable.  The Trustee further argues that, even if an agent-principal relationship between Debtor and Huddle had existed at the time of the auction, that relationship terminated upon conclusion of the auction sale and thereafter became a debtor-creditor relationship.  In support of these arguments, the Trustee highlights the fact that, after the auction sale, the proceeds received by Debtor were deposited in Debtor's general bank account where they were commingled with other funds in Debtor's possession and control.  The Trustee further maintains that evidence presented to the bankruptcy court showed that during the period between the date of the auction sale and the date the net proceeds were paid over to Huddle and the Bank, Debtor's general bank account had a negative balance on several occasions.  The Trustee argues that this evidence proved that the money paid to Huddle and the Bank could not have been the actual proceeds from the auction sale of Huddle's business assets; in other words, the funds paid to Huddle and the Bank could not be traced.  The Trustee also maintains that evidence presented to the bankruptcy court demonstrated that Debtor bore the risk of loss if the successful bidders failed to pay for assets they purchased.

Based upon all these factors, the Trustee argues, an agency relationship did not exist under Nebraska law at the time the $6,761.48 payment was delivered to Huddle and the Bank. For the reasons stated below, we agree.

In Bender & Sons, the Nebraska Supreme Court noted generally that an auctioneer, in selling property for another at an auction, acts as the agent for its customer, and therefore the auctioneer's rights and liabilities arising out of the auction sale are governed by the general principles of agency law. 421 N.W.2d at 770-71. The question of law regarding the relationship between an auctioneer and auction customer arose because the auctioneer had made a materially false statement regarding auctioned property and was being sued for misrepresentation. The Nebraska Supreme Court held that the auctioneer's statements regarding the attributes of the auctioned property were made as an agent for its principal (i.e., the customer) and therefore the potential liability of the auctioneer depended on whether the misrepresentation had been authorized by the customer. Id. at 771-72. Thus, the holding in Bender & Sons is limited to its context: an auctioneer ordinarily acts as the agent for its customer in making representations regarding the customer's assets before or during the sale of those assets. So limited, the holding in Bender & Sons is inapplicable to the facts of the present case.

Wright & Souza, on the other hand, although factually not on point, is more instructive in its statement of the applicable law. In Wright & Souza, a loan broker sued a prospective borrower for anticipatory breach of contract and prevailed before a jury. 510 N.W.2d at 415-16. On appeal, the borrower argued that the trial court erred in failing to give a jury instruction regarding the loan broker's alleged duties as the borrower's agent. The Nebraska Court of Appeals held that no error had occurred because the borrower had failed to establish the existence of an agency relationship. Id. at 417. In reaching its decision, the Nebraska

-8-

appellate court identified several factors to be considered in determining whether an agency relationship exists: (1) the extent of control the alleged principal exercises over the details of the alleged agent's work; (2) whether the work is done with or without the supervision of the alleged principal; (3) whether payment is by the hour or by the job; (4) whether the work performed by the alleged agent is part of the regular business of the alleged principal; (5) whether the alleged principal is in the type of business performed by the alleged agent; and (6) whether the alleged agent is engaged in a distinct occupation or business. Id. In applying the above factors to the facts of the case before it, the Nebraska Court of Appeals held that no agency relationship existed because the borrower exercised no control over the loan broker; the loan broker was engaged in a distinct occupation which was usually done without supervision; the method of payment was not based on an hourly rate; and the services performed by the loan broker were not a regular part of the borrower's business. Id.

Likewise, in the case before us, application of the Wright & Souza factors indicates that Debtor was not Huddle's agent at the time the auction proceeds were deposited in Debtor's account and subsequently paid over to Huddle and the Bank. Debtor was engaging in a distinct occupation, unsupervised by Huddle and entirely independent of Huddle's business. The method of payment was not based on an hourly rate but was determined by the extent to which Debtor successfully performed its services. Debtor kept the auction proceeds in its general bank account, where the money lacked any indicia of Huddle's ownership, was intermingled with other funds, and was subject to any claims by Debtor's creditors. Certainly, at that point, Huddle exercised no control over Debtor's conduct with respect to the auction proceeds. We therefore hold that the bankruptcy court erred in concluding that, at the time Debtor paid Huddle and the Bank the $6,761.48 in proceeds from the auction sale, Debtor was acting as Huddle's agent under Nebraska law. Accord Restatement (Second) of Agency § 398 cmt. c (1958)

("In the case of certain professional agents, such as auctioneers and factors, it is customary, and hence ordinarily understood, that the agent can properly mingle his funds with those of his principal. . . . If the funds are properly mingled, the inference is that the agent becomes a debtor to the amount received for the principal, but that he agrees to maintain enough in the fund to pay the principal, who has a charge upon the fund to the amount of the debt.").

Having determined that the bankruptcy court erred in holding that, under Nebraska law, Debtor acted as Huddle's agent at the time the payment was made, we consider an alternative theory advanced by the Bank to support its claim that the money transferred was nevertheless not "an interest of the debtor in property," within the meaning of § 547(b). The Bank suggests that, even if Debtor was not acting as Huddle's agent when it retained and delivered the proceeds from the auction sale, the Trustee still cannot establish a transfer of an interest of Debtor in property because the money that was transferred to Huddle and the Bank was presumably derived from later auctions and therefore belonged to other auction customers. In other words, the Bank argues that, regardless of whether the property actually belonged to the transferees or some other party, the money was not property of the estate at the time of the transfer and therefore cannot be recovered.

The Trustee, on the other hand, urges us to follow the reasoning in Franzwa v. KNEZ Building Material Co. (In re Walker Indus. Auctioneers, Inc.), 38 B.R. 8, 12-13 (Bankr. D. Or. 1983) (Walker), in which the Bankruptcy Court for the District of Oregon held on summary judgment that the debtor, an auctioneer, was in a debtor-creditor relationship, not an agent-principal relationship, with its customers at the time payments were made to the customers and therefore those payments were avoidable preferential transfers. The Trustee argues that the decision in Walker represents the only

-10-

fair approach in this type of case because, otherwise, the ability of auction customers to recover auction proceeds from the bankruptcy estate of the debtor-auctioneer would depend entirely upon a race to the courthouse, which directly contradicts the goal of the bankruptcy laws to impose a fair and orderly distribution of property among equal creditors and permits a "robbing Peter to pay Paul" result. Brief for Appellant at 37.

In analyzing the issue of whether the transfer involved an interest of the debtor in property, for purposes of applying § 547(b), we agree with the reasoning in Walker. In Walker, the bankruptcy court considered, among other things, that, under the relevant auction contracts, the auctioneer had the right to deposit auction proceeds in its general account and to use funds derived from an auction sale during the time between the date of the sale and the date when the net proceeds would become due to the customer, twenty days after the sale. 38 B.R. at 12. The court in Walker also relied on the broad meanings of the terms "creditor" and "claim" under the Bankruptcy Code, 11 U.S.C. § 101(10)(A),(5), and held that the customers became "creditors" of the debtor immediately after the auction. Id. ("[u]nder the above definitions [of `creditor' and `claim'], [the customers] were creditors of the debtor immediately after the June 12th auction"). Therefore, even if the relationship between the auctioneer and its customers were characterized as that of principal and agent, the Walker court held, once the funds were commingled and it became impossible to actually trace the principal's own money, the relationship had to be treated as a creditor-debtor relationship under the Bankruptcy Code with respect to those disputed funds. Accord 4 Collier ¶ 541.08, at 541-47 ("In a true consignment arrangement, bailment, or agency, recovery by the bailor, principal, or consignor rests upon identification. When the property involved, or its proceeds, has been intermingled with other goods or funds of the debtor's, the owner must definitely trace that which he claims as contained in the assets of the

-11-

estate."). Finally, the Walker court observed that "[a] major goal of the Bankruptcy Code is to treat equal classes of creditors equally," and that "[o]ne of the tools to effect this goal is the preference statute." 38 B.R. at 13.

Similarly, in Salem v. Lawrence Lynch Corp. (In re Farrell & Howard Auctioneers, Inc.), 172 B.R. 712 (Bankr. D. Mass. 1994) (Farrell & Howard), the trustee brought an adversary proceeding under 11 U.S.C. § 547 to avoid a pre-petition payment made by the debtor-auctioneer to one of its customers. The defendant-customer moved for summary judgment arguing, among other things, that it owned the money transferred and therefore the money was not property of the debtor's estate at the time of the transfer.[4] Id. at 715-16. In holding that the debtor had an equitable interest in the money transferred, for purposes of applying § 547(b), the bankruptcy court in Farrell & Howard reasoned:

> The wording of the contract, as well as the Debtor's actions, are conclusive on ownership of the sales proceeds. The contract imposed no obligation to segregate the proceeds or hold them in trust. It merely required the Debtor to pay the [customer] the net proceeds, less commission, within fourteen business days following the auction. Consistent with these terms, the Debtor deposited the proceeds in its general operating account, intermingling them with other sales proceeds and drawing checks upon the account for the Debtor's expenses and payments to other sellers. All of this, particularly the agreement's terms, establishes that the parties' relationship following the auction was that of debtor and creditor rather than trustee and beneficiary. This is so even though the arrangement with the property prior to sale was a consignment.

Id. at 716 (footnotes omitted).

_____

[4]As in the present case, the defendant-customer also argued, in the alternative, that the transfer occurred in the ordinary course of business under 11 U.S.C. § 547(c)(2) and therefore the trustee could not recover the funds. Salem v. Lawrence Lynch Corp. (In re Farrell & Howard Auctioneers, Inc.), 172 B.R. 712, 717-18 (Bankr. D. Mass. 1994).

Finally, although neither party has cited <u>Bellanca I</u>, a decision from this circuit, or the bankruptcy court's decision on remand, 96 B.R. 913 (Bankr. D. Minn. 1989) (<u>Bellanca II</u>), we believe those decisions are apposite in the present case and provide strong support for the conclusion that the $6,671.48 payment was an avoidable preferential transfer. The pertinent facts underlying <u>Bellanca I</u> and <u>Bellanca II</u> are as follows. The debtor, Bellanca Aircraft Corporation (Bellanca), sold three airplanes to Anderson-Greenwood & Company (AGCO) and then later sold the airplanes to third parties on behalf of AGCO. The third parties paid Bellanca, which deposited the payments into its general corporate bank account and then drew its own checks to pay AGCO. <u>Bellanca II</u>, 96 B.R. at 15. The bankruptcy court initially held that the payments by Bellanca to AGCO were not preferential transfers because the proceeds from the airplane resales never became Bellanca's property, as required under § 547(b), and the district court affirmed. <u>See Bellanca I</u>, 850 F.2d at 1278. On appeal, this court remanded to the bankruptcy court on grounds that the bankruptcy court's findings of fact were insufficient to make a determination of whether an avoidable preferential transfer had occurred. This court explained "[a] finding that the planes did not belong to Bellanca does not automatically mean that proceeds of the plane sales were not 'property of the debtor' within the meaning of the Bankruptcy Code. Whether the proceeds became property of the debtor is initially a question of state law that depends on several unresolved factual issues." <u>Id.</u> at 1278-79. This court went on to note that "[t]he [bankruptcy] court did not explicitly make a finding that Bellanca sold the planes as AGCO's agent, nor did the court find whether Bellanca segregated the funds pending payment to AGCO." <u>Id.</u> at 1279.

On remand, the bankruptcy court stated:

A preferential transfer must involve a transfer of property in which the debtor has an interest. . . . To

avoid the transfer, it must be shown that the transfer deprived the debtor's estate of something of value which could have been used to satisfy claims of the creditors. . . .

Bellanca was ultimately successful in selling the three AGCO-owned aircraft to third parties. The funds received in payment of the sales were transmitted to Bellanca who deposited the funds in its general corporate account. These deposited funds became the property of Bellanca since it had legally unrestricted use of the funds and the funds were commingled with other funds. . . . "[A]ny funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and transfers that diminish that property are subject to avoidance." In re Chase & Sanborn Corp. (Nordberg v. Sanchez), 813 F.2d 1177, 1181 (11th Cir. 1987).

Bellanca II, 96 B.R. at 915 (internal citations omitted).

The bankruptcy court then observed that AGCO had not instructed Bellanca to segregate the payments received from the third-party purchasers of the aircraft, and, moreover, the facts clearly indicated that AGCO consented to Bellanca's conduct. Id. The bankruptcy court also noted that the funds had been deposited in Bellanca's corporate account, were commingled with other funds, and were subject to the claims of Bellanca's creditors; thus, no third party inspecting Bellanca's bank account could have known that a certain portion of the funds were ultimately to be paid to AGCO, nor could it be determined how much was owed to AGCO. Id. at 915-16. Accordingly, the bankruptcy court concluded that Bellanca's transfer of the payments to AGCO was a transfer of property of the debtor and constituted a voidable preference.[5] Id.

_____

[5]We note that, in Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.), 850 F.2d 1275 (8th Cir. 1988) (Bellanca I), and the bankruptcy court's decision on remand, 96 B.R. 913 (Bankr. D. Minn. 1989) (Bellanca II), the courts were interpreting the pre-1984 version of § 547(b), which contained the language "property of the debtor" instead of the current language "an interest of the debtor in property." See Bellanca I, 850 F.2d at 1278-79. Because the current version is, if anything, broader

-14-

at 915, 917. Accord Carlson v. Farmers Home Admin. (In re Newcomb), 744 F.2d 621, 626 (8th Cir. 1984) ("[t]o be avoidable a transfer must deprive the debtor's estate of something of value which could otherwise be used to satisfy creditors"). Based upon these findings, and the nature of the third-party purchasers' direct dealings with Bellanca, the bankruptcy court also rejected AGCO's contention that Bellanca acted as its agent, or that an equitable constructive trust could be found under Minnesota law. Bellanca II, 96 B.R. at 916.

In the present case, the bankruptcy court's factual findings indicate that Huddle had not instructed Debtor to segregate the payments received from the auction sale and that the payments were deposited in Debtor's general bank account where they were commingled with other funds and were subject to the claims of Debtor's creditors. No third party inspecting Debtor's bank account could have determined that some of the funds were owed to Huddle or Huddle's creditors, or how much was owed. In view of these facts, we hold that the auction proceeds retained by Debtor were property of the estate once they were deposited in Debtor's general bank account and, therefore, the transfer of the check in the amount of $6,761.48 from Debtor to Huddle and the Bank constituted a transfer of an interest of the debtor in property, within the meaning of § 547(b).[6]

---

in scope than its predecessor, the bankruptcy court's findings in Bellanca II, supporting the conclusion that the sale proceeds transferred were "property of the debtor," would also have resulted in a finding that "an interest of debtor in property" was transferred.

[6]Our decision in the present case is not inconsistent with Dolph Clothiers, Inc. v. Salomon (In re Martin Fein & Co.), 34 B.R. 333 (Bankr. S.D.N.Y. 1983) (Fein I), in which the bankruptcy court held that, under New York law, an auctioneer acted as agent for its auction customers at all relevant times and funds physically segregated by the auctioneer in envelopes marked with the auction customers' names were not part of the bankruptcy estate. Fein I is distinguishable for several reasons; for example, not only were the

**Conclusion**

The bankruptcy court erred in holding that, under Nebraska law, Debtor was Huddle's agent at the time the check for $6,761.48 was transferred to Huddle and the Bank and that the payment was not a transfer of an interest of Debtor in property, within the meaning of 11 U.S.C. § 547(b). The order of the district court affirming the judgment of the bankruptcy court is therefore reversed and the case is remanded to the district court. Because the findings of the bankruptcy court are not sufficient to make a full determination of whether the Trustee should prevail under § 547,[7]

customers' funds physically segregated by the debtor, they were recovered in the original form of cash and checks received by the debtor from the auction bidders. Id. at 335. Nor is our holding today directly at odds with the later decision in Varon v. Salomon (In re Martin Fein & Co.), 43 B.R. 623 (Bankr. S.D.N.Y. 1984) (Fein II), despite the bankruptcy court's determination in Fein II that proceeds from an auction sale which were deposited in the auctioneer's general corporate account were not part of the auctioneer's bankruptcy estate. The decision in Fein II rested on the holding that, under New York law, the auctioneer acted as agent for its auction customers at all relevant times and therefore the auction proceeds were held in a constructive trust. As a result, the commingling of funds was wrongful and the auction customer, as beneficiary of the constructive trust, had an equitable lien or charge upon the entire bank account in which the trust res was wrongfully deposited. Id. at 626-28. By contrast, in the present case, Debtor was not Huddle's agent under Nebraska law at the time the auction proceeds were collected from the bidders, deposited in Debtor's bank account, and subsequently transferred to Huddle and the Bank. Therefore, no constructive trust was implied by the relationship and Debtor did not act wrongfully in depositing the funds in its bank account.

[7]The Bank additionally argued on appeal that the Trustee failed to prove one or more of the criteria for a voidable preferential transfer enumerated in subsections (1) through (5) of § 547(b) and that, in any case, the limitations on recovery of preferential transfers under 11 U.S.C. §§ 547(c)(2), 550(b) preclude the Trustee from recovering the funds received by the Bank. Because the bankruptcy court did not reach these issues, and did not make sufficient factual findings upon which we could address them, we leave them to the bankruptcy court's initial consideration on remand. See Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987) (neither the district court nor the court of

the district court is instructed to remand this case to the bankruptcy court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

appeals may make findings of fact; if the bankruptcy court's findings are silent or ambiguous as to a material issue, the proper disposition on appeal is to remand to the bankruptcy court to make the necessary factual determinations).